Kimberly HUGGINS, a Minor, by her next friend, Alice HUGGINS, and Ronald Huggins, a Minor by his next friend, Alice Huggins, Plaintiffs,

v.

The SEA INSURANCE COMPANY, LTD., a corporation, Defendant.

No. 88-C-157.

United States District Court, E.D. Wisconsin.

April 12, 1989.

Thomas E. Greenwald, Connolly, Oliver, Close & Warden, Rockford, Ill., for plaintiffs.

Robert Penegor, Brookfield, Wis., for defendant.

## DECISION AND ORDER

CURRAN, District Judge.

### I. PROCEDURAL HISTORY

Kimberly and Ronald Huggins, the minor children of Terry Huggins, have commenced the above-captioned case seeking more than $50,000.00 in compensatory damages for loss of the society and companionship of their father, who was seriously injured in a motor vehicle accident in Waukesha County (Wisconsin) on March 24, 1985. The defendant, The Sea Insurance Company, Ltd. is the issuer of a policy of excess liability insurance to a service corporation, Dr. Bruce J. Barrette, D.D.S., S.C. An additional insured, under the policy, Dr. Bruce Barrette was involved in the March 24 accident. This court has diversity jurisdiction over the subject matter of the plaintiffs' claims because the amount in controversy for each plaintiff exceeds $10,-000.00; the plaintiffs are citizens of Illinois; The Sea Insurance Company is incorporated in New Jersey and has its principal place of business in New Jersey; the defendant's insured, Dr. Bruce J. Barrette, D.D.S., S.C., is a Wisconsin professional corporation; and its additional insured, Dr. Bruce Barrette, is a citizen of the State of Wisconsin. *See* 28 U.S.C. § 1332(a) & (c).

The defendant answered the complaint denying liability and asserting as an affirmative defense that the plaintiffs are "estopped" from collecting damages because they did not join in the principal action brought by Terry Huggins in the Circuit Court of Waukesha County (Wisconsin). The state court entered final judgment in favor of Terry Huggins and against Sea Insurance and other defendants on December 1, 1987.

After the initial scheduling conference in this court, the defendant moved for summary judgment on the ground that there are no material issues of fact in dispute and that it is entitled to judgment as a matter of law on the basis of its affirmative defense. *See* Federal Rule of Civil Procedure 56(b). At the same time the plaintiffs moved for a partial summary judgment of liability on the ground that the defendant is estopped from relitigating those issues of liability determined against it in the Waukesha County action. The plaintiffs are asking for an order declaring that:

> [T]he Defendant is directly liable for the loss of society, companionship, love and affection of their father by reason of the negligence of Bruce J. Barrette with such liability not to exceed $532,734.75 plus taxable costs in this action and, furthermore, that the Defendant, Bruce J. Barrette,[1] was, at the time and place in question, negligent and such negligence was a proximate cause of the bodily injuries to Terry Huggins, the father of the minor plaintiffs.

Motion for Partial Summary Judgment at 1. These motions are now fully briefed and ready for decision.

### II. MATERIAL FACTS

Under Federal Rule of Civil Procedure 56(c), a party moving for summary judgment must show that the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *See McGraw–Edison Company v. Walt Disney Productions,* 787 F.2d 1163, 1167 (7th Cir.1986). Based on the state court pleadings and other documents which the parties have submitted in support of their motions, the material and undisputed facts pertaining to this controversy, as recounted by the plaintiffs, are that:

> Kimberly and Ronald Huggins were minor children of Terry Huggins who was involved in an automobile accident on March 24, 1985. Mr. Huggins was a passenger in an automobile that had

---

1. Despite the plaintiffs' precatory language, Bruce J. Barrette is not a defendant in this lawsuit.

been parked along the side of Highway 15 (now Highway 143) in Waukesha County near the City of New Berlin. Bruce J. Barrette was, just before the accident, driving his vehicle in an easterly direction upon Highway 15. His vehicle left the traveled portion of the highway and struck the rear of the vehicle occupied by Terry Huggins.

Mr. Huggins subsequently brought suit in the Circuit Court of Waukesha County on his behalf, and only his behalf, seeking the recovery for injuries which he sustained in the accident. The trial in that matter was held in the Circuit Court of Waukesha County before Judge Wollenzien in late October and early November of 1987. The Defendants in that case included the driver of the vehicle being operated by Terry Huggins and his insurance carrier, State Farm Fire & Casualty Insurance Company, Bruce J. Barrette, his professional corporation known as Bruce J. Barrette, D.D.S., S.C., his primary automobile liability insurance carrier, State Farm Automobile Insurance Company and his excess liability insurance carrier, The Sea Insurance Company, a division of the Chubb Group of insurance companies. Before the trial began, the professional corporation was dismissed by order of the Court on a Motion of that Defendant for Summary Judgment asserting that the individual Defendant, Bruce J. Barrette, was not acting within the scope of his employment at the time of the occurrence. The driver of the Huggins' vehicle and its insurance carrier were dismissed prior to the lawsuit upon Stipulation and Order, it having been stipulated and so ordered that the driver of that vehicle was not negligent nor did any action or omission on his part contribute to cause the occurrence which was the subject of this suit or the injuries sustained by Terry Huggins. At the commencement of the trial, counsel for Bruce J. Barrette, State Farm Automobile Insurance Company and The Sea Insurance Company admitted on the record that Bruce J. Barrette was negligent in the operation of his vehicle and that such negligence was the sole and proximate cause of the occurrence in question and the injuries, if any, sustained by Terry Huggins following that accident.

The case proceeded to trial over the next 2½ weeks. A special verdict was returned in favor of the Plaintiff, Terry Huggins, for enumerated items of damages sustained solely and exclusively by Terry Huggins. On December 1, 1987, Judge Wollenzien entered judgment on behalf of the [sic] Terry Huggins and against the Defendants, Bruce J. Barrette, State Farm Automobile Insurance Company and The Sea Insurance Company for the sum of $567,265.25 which was a total of the Special Verdict which was an itemized verdict asking the jury to determine damages which would fairly and reasonably compensate Terry Huggins for the following:

(1) Medical and hospital expenses, past and future;

(2) Past and future loss of earning capacity; and

(3) Past and future pain, suffering, disability and disfigurement sustained by Terry Huggins.

Motion for Partial Summary Judgment at 1–3.

### III. GOVERNING LAW

Given these undisputed facts, the threshold legal issue in this case is whether Kimberly and Ronald Huggins can maintain their claims for loss of their father's society and companionship in an independent action commenced after the entry of final judgment in their father's underlying case or whether they have waived their right to bring such claims because they failed to assert them in the principal action. Where, as here, the admitted or undisputed material facts present no conflicting inferences or conclusions, but only questions of legal consequences under the governing law, there is no barrier to summary judgment. *See Fitzsimmons v. Greater St. Louis Sports Enterprises, Inc.,* 63 F.R.D. 620, 622 (S.D.Ill.1974).

In a diversity action a federal court must look to the substantive law of the forum

for the governing law. *See Erie Railroad Company v. Tompkins*, 304 U.S. 64, 71–80, 58 S.Ct. 817, 818–23, 82 L.Ed. 1188 (1938). Thus, Wisconsin law should apply unless one of the parties argues that another state has a more substantial concern with the litigation and the laws of that state conflict with the relevant laws of the forum. In this case, although the plaintiffs are citizens of Illinois and Illinois does not recognize a cause of action for loss of parental consortium,[2] the parties assume that Wisconsin law should apply and the court sees no reason to disturb that assumption. *See Mucha v. King*, 792 F.2d 602, 604 (7th Cir.1986); *National Association of Sporting Goods Wholesalers, Inc. v. F.T.L. Marketing Corporation*, 779 F.2d 1281, 1284–85 (7th Cir.1985).

In 1984—one year before Terry Huggins was injured—the Wisconsin Supreme Court ruled in *Theama v. City of Kenosha*, 117 Wis.2d 508, 344 N.W.2d 513 (1984), that a "minor child may recover for the loss of care, society, companionship, training, and guidance of a parent due to the negligent acts of a third party." *Id.* at 519–20, 344 N.W.2d at 518–19. However, the *Theama* court specifically declined to address the question raised by the instant case—whether the child's claims must be joined with those of the parent. *See Id.* at 526, 344 N.W.2d at 521. During the years following *Theama*, no Wisconsin appellate courts have confronted this issue in a reported decision. Therefore, this is a case of first impression in this forum. In a diversity case, if the forum's highest court has not spoken on an issue, the federal court must review all available data and predict how the forum's courts would rule. *See, e.g., Green v. J.C. Penney Auto Insurance Company, Inc.*, 806 F.2d 759, 761–65 (7th Cir.1986); *Bornstein v. Fireman's Fund Insurance Company*, 623 F.Supp. 814, 815 (E.D.Wis.1985).

## IV. POSITIONS OF THE PARTIES

In support of its motion The Sea Insurance Company argues that section 803.-03(2)(a) of the Wisconsin Statutes should apply to require joinder of claims for loss of parental consortium. This subsection provides, in relevant part, that:

> *Joinder of related claims.* A party asserting a claim for affirmative relief shall join as parties to the action all persons who at the commencement of the action have claims based upon subrogation to the rights of the party asserting the principal claim, derivation from the principal claim, or assignment of part of the principal claim. For purposes of this section, a person's right to recover for loss of consortium shall be deemed a derivative right.

Wis.Stat. § 803.03(2)(a).

In *Theama* the court explicitly eschewed the use of the term "derivative" as descriptive of the plaintiffs' claims. Instead, the court characterized the parent-child claims as "that of an injury to a primary tort victim, the parent, and that to the child as a secondary tort victim." *Theama*, 117 Wis. 2d at 527, 344 N.W.2d at 522. Despite this language, the defendant reasons that, although the Huggins children's claims are separate from their father's in the sense that each is predicated upon the invasion of different interests, the "children's claims are derivative in the sense that they arose from the same tortious act that inflicted injury upon their father." Memorandum in Support of Defendant's Motion for Summary Judgment at 8. The defendant insists, therefore, that subsection 803.03(2)(a) should apply to require joinder.

In addition to this statutory directive, the defendant points to Wisconsin Supreme Court decisions stating that claims for loss of spousal consortium should be joined with the claims of the injured spouse. *See Moran v. Quality Aluminum Casting Company*, 34 Wis.2d 542, 558, 150 N.W.2d 137, 145 (1967) ("double recovery can be obviated by imposing as a condition to permitting a wife the right to maintain an action for loss of consortium against a negligent tort-

---

**2.** *See Mueller v. Hellrung Construction Company*, 107 Ill.App.3d 337, 63 Ill.Dec. 140, 437 N.E. 2d 789 (1982).

feasor the requirement that her cause of action be joined with that of her husband for his injuries"). Likewise, in Wisconsin a parent seeking damages for loss of the society and companionship of an injured minor child must join his or her cause of action with that of the child. *See Shockley v. Prier*, 66 Wis.2d 394, 404, 225 N.W.2d 495, 501 (1975) ("a parent may maintain an action for loss of aid, comfort, society and companionship of an injured minor child against a negligent tort-feasor provided, and on condition, that the parent's cause of action is combined with that of the child for the child's personal injuries"). Based on this analogous precedent, The Sea Insurance Company concludes that the plaintiffs have waived their opportunity to bring their claims in this action because they failed to join them in Terry Huggins' principal action in Waukesha County.

In response, the plaintiffs argue that it is Sea Insurance which should have raised the failure to join Kimberly and Ronald as necessary parties as an affirmative defense to the state court complaint. In the alternative, the plaintiffs contend that the joinder rule is merely procedural and that the defendant has waived its opportunity to raise the issue of joinder in this case by not raising it in the prior action.[3] The plaintiffs go on to point out that no Wisconsin appellate court has explicitly ruled that children must join their claims for loss of parental consortium with those of the injured parent and that, even if joinder is generally required, the Wisconsin court has allowed exceptions to the general rule. *See Fitzgerald v. Meissner & Hicks, Inc.*, 38 Wis.2d 571, 157 N.W.2d 595 (1968).

In reply, the defendant says that the plaintiffs have cited no authority for their contention that it was the responsibility of the defendants in the Waukesha case to demand the joinder of Terry Huggins' chil-dren. Wisconsin's joinder statute provides that the party seeking affirmative relief must be the one to join parties with claims deriving from the principal claim. *See* Wis. Stat. § 803.03(2)(a). It is the defendant's position that requiring a defendant to join additional plaintiffs would result in a conflict of interest. *See* Reply Brief to Plaintiffs' Response Brief to Defendant's Motion for Summary Judgment at 4. Therefore, Sea Insurance believes (and this court agrees),[4] that its failure to seek the joinder of Kimberly and Ronald as plaintiffs in the state court case does not prevent it from raising the issue of whether the minors waived their claims prior to commencing this federal lawsuit.

Sea Insurance further contends that the Wisconsin Supreme Court has only allowed exceptions to the rule of mandatory joinder of derivative claims in cases which were commenced before causes of action for loss of the society and companionship of an injured husband or parent were judicially recognized. *See, e.g., Bell v. County of Milwaukee*, 134 Wis.2d 25, 41, 396 N.W.2d 328, 335 (1986) (children allowed to maintain separate lawsuit for claims for loss of injured parent's society and companionship when claims were pending before the *Theama* court recognized this cause of action); *Fitzgerald v. Meissner & Hicks, Inc.*, 38 Wis.2d 571, 580–82, 157 N.W.2d 595, 599–600 (1968) (wife allowed to bring separate claim for loss of injured husband's consortium when claim was pending on appeal when the *Moran* court first recognized this cause of action). It must be noted, however, that in *Fitzgerald v. Meissner & Hicks, Inc.*, the Wisconsin Supreme Court ruled that there could be other exceptions to the general rule requiring joinder. The court said that:

> It is, of course, preferable that the claims of both husband and wife for loss

---

**3.** In its Answer to the Plaintiff's Third Amended Complaint filed in the state court action, The Sea Insurance Company did raise the affirmative defense that the plaintiff had failed to join necessary parties pursuant to section 803.03 of the Wisconsin Statutes. *See* Reply Brief to Plaintiffs' Response Brief to Defendant's Motion for Summary Judgment at Exhibit A. However, it appears that the "necessary parties" to which the defendant referred were entities which had paid expenses incurred by Terry Huggins.

**4.** Clearly, the injured parent is in the best position to know how many children he or she has who might suffer from the loss of his or her society and companionship during minority.

of consortium be joined for the purpose of trial so that the same finder of fact passes on both claims to avoid any duplication. However, if this cannot be done because of procedural obstacles or the inability or unwillingness of the husband to assert his claim, the wife should not be prevented from pursuing her own independent cause of action.

*Fitzgerald,* 38 Wis.2d 571, 581, 157 N.W.2d 595, 600 (1968). Nevertheless, Sea Insurance says that nothing in the record shows that the claims of Kimberly and Ronald Huggins fit within any of these exceptions. Their father had not yet been injured or commenced his case when the Wisconsin Supreme Court recognized that a child can maintain a cause of action for loss of an injured parent's society and companionship. Because he subsequently did commence a case, Terry Huggins was obviously not unable or unwilling to assert his own claims and there is no evidence or contention that he was unwilling or unable to allow his children to join their claims with his.

## V. DECISION

■ In urging that a child's claim for loss of an injured parent's love and companionship should be barred if the claim is not joined with those of the injured parent, The Sea Insurance Company is espousing the majority position within the minority of jurisdictions which recognize such a cause of action. Of the thirty-four jurisdictions [5] which have considered the issue, only eight state appellate courts have recognized a child's claim for loss of an injured parent's consortium.[6] In addition, at least one federal court has predicted that the highest court of Ohio would overrule its earlier decisions and recognize such a cause of action.[7] Of these nine states, six require that the child's cause of action be joined with that of the parent, if feasible.[8] Wisconsin and Ohio have not addressed the issue and only one court—an intermediate appellate court in Michigan—has ruled, without explanation, that the laws of that state do not require a consortium claim to be joined to the claims raised by the principal plaintiff. *See Oliver v. Department of State Police,* 160 Mich.App. 107, 408 N.W.2d 436, 439 (1987).

■ Although this court need not be bound by the mere weight of judicial precedent, a federal court sitting in diversity must be hesitant to adopt a minority posi-

5. *See Hibpshman v. Prudhoe Bay Supply, Inc.,* 734 P.2d 991, 992 n. 4 (Alaska 1987) (list of jurisdictions refusing to recognize the cause of action); *Dearborn Fabricating and Engineering Corporation, Inc. v. Wickham,* 532 N.E.2d 16, 16–17 & n. 2 (Ind.Ct.App.1988) (supplemental list of jurisdictions refusing to recognize the cause of action). *See also DeLoach v. Companhia De Navegacao Lloyd Brasileiro,* 782 F.2d 438, 443 (3d Cir.1986) (concluding that maritime law does not grant children a right to recover for the loss of society and companionship of their parent longshoreman who has been injured by the negligence of a shipowner).

6. *See Hibpshman v. Prudhoe Bay Supply, Inc.,* 734 F.2d 991 (Alaska 1987); *Dearborn Fabricating and Engineering Corporation, Inc. v. Wickham,* 532 N.E.2d 16 (Ind.Ct.App.1988); *Weitl v. Moes,* 311 N.W.2d 259 (Iowa 1981), *overruled in part, Audubon–Exira Ready Mix, Inc. v. Illinois Central Railroad Company,* 335 N.W.2d 148 (Iowa 1983) (claim permitted statutorily, not under *Weitl's* common-law theory); *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690 (1980); *Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424 (1981); *Hay v. Medical Center Hospital,* 145 Vt. 533, 496 A.2d 939 (1985); *Ueland v. Reynolds Metals Company,* 103 Wash.2d 131, 691 P.2d 190 (1984) (en banc); *Theama v.*

*City of Kenosha,* 117 Wis.2d 508, 344 N.W.2d 513 (1984).

7. *See Leach v. Yellow Cab, Inc.,* 628 F.Supp. 293 (S.D.Ohio 1985), *aff'd,* 815 F.2d 704 (6th Cir. 1987). *See also Reighley v. International Playtex, Inc.,* 604 F.Supp. 1078 (D.Colo.1985) (predicting that Colorado's highest court would overrule its previous decisions and recognize such a cause of action). *But see also Beikmann v. International Playtex, Inc.,* 658 F.Supp. 255 (D.Colo.1987) (predicting that Colorado's highest court would not recognize such a cause of action).

8. *See Hibpshman v. Prudhoe Bay Supply, Inc.,* 734 F.2d 991, 997 (Alaska 1987); *Dearborn Fabricating and Engineering Corporation, Inc. v. Wickham,* 532 N.E.2d 16, 17 (Ind.Ct.App.1988); *Nelson v. Ludovissy,* 368 N.W.2d 141, 146 (Iowa 1985); *Madison v. Colby,* 348 N.W.2d 202, 209 (Iowa 1984); *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 517, 413 N.E.2d 690, 696 n. 12 (1980); *Hay v. Medical Center Hospital,* 145 Vt. 533, 540, 496 A.2d 939, 943 (1985); *Ueland v. Reynolds Metals Company,* 103 Wash.2d 131, 137–40, 691 P.2d 190, 194–95 (1984) (en banc).

tion when called upon to declare new principles of state law. *See Shaw v. Republic Drill Corporation,* 810 F.2d 149, 150 (7th Cir.1987); *Afram Export Corporation v. Metallurgiki Halyps, S.A.,* 772 F.2d 1358, 1370 (7th Cir.1985). The Seventh Circuit has emphasized that plaintiffs desirous of succeeding on novel state law claims should present these claims initially in state court. *See Shaw,* 810 F.2d at 150.

In this case the majority position is more persuasive because these courts requiring joinder when feasible have set forth cogent reasons for adopting their position. Foremost among these considerations is that of preventing multiplicitous litigation. The possibility of separate lawsuits brought at different points in time is increased when the claim is one for loss of parental consortium because there could be as many lawsuits as the injured parent has children. Moreover, under Wisconsin law, the limitation period on a minor child's claim does not expire until two years after the child reaches the age of eighteen. *See* Wis.Stat. § 893.16(1). Therefore, a defendant could be subjected to the possibility of serial lawsuits for up to twenty years.

Some of the other undesirable consequences of allowing children to pursue their claims separately have been suggested by the Iowa Supreme Court which predicted that:

> Possible consequences of this potential multiplicity of suits include an increase in litigation costs, additional burdens on an already-crowded court system and the possibility that settlements with injured parents will be discouraged because the children's independent claims would not be extinguished. Arguably, there is also a possibility that damages awarded to the child in a subsequent independent suit may overlap with those already awarded to the parent, because the jury in the parent's case may have enlarged its award somewhat to compensate for the loss of companionship suffered by the children.

*Weitl v. Moes,* 311 N.W.2d 259, 268 (Iowa 1981), *overruled in part on other grounds, Audubon–Exira Ready Mix, Inc. v. Illinois Central Railroad Company,* 335 N.W.2d 148 (Iowa 1983).

Allowing the child to postpone bringing a claim for loss of parental society and companionship would also defeat the purpose of any compensatory damages which might be awarded. The Washington Supreme Court has explained that:

> Allowing a child to recover for loss of consortium may aid in ensuring the child's continued normal and complete mental development into adulthood. As one writer noted,
>
>> [t]he premise that money can mitigate the impact of a loss may be especially appropriate in the case of a child deprived of a parent's love and guidance. Compensation awarded the child might enable the family to obtain live-in help that could provide not only domestic services, but, incidentally, a measure of guidance and companionship. The child who has suffered an emotional maladjustment as a result of his deprivation would have funds available to pay for needed psychiatric treatment. It is not unrealistic to assume that in many cases monetary compensation could make the difference between a child who suffers a permanent handicap due to the loss of a parent's love and guidance and a child who is able to make a reasonable adjustment to his loss.
>
> (Footnotes omitted). [Note, *The Child's Right to Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent,* 56 B.U.L.Rev. 722, 734 (1976)]. Although a monetary award will not enable a child to regain the loss of a parent's love, companionship, and guidance, we believe such an award may enable the child to lessen the impact of the loss.

*Ueland v. Reynolds Metals Company,* 103 Wash.2d 131, 138, 691 P.2d 190, 194 (1984) (en banc). None of these goals of compensation could be achieved if a child waited until the age of majority or later to seek monetary relief.

If the child receives the immediate benefit of any compensation, society will also

benefit. The Michigan Supreme Court has suggested that if the child is able to function without emotional handicap, the saving in costs to society may well offset any increase in insurance premiums brought about by this expansion of tort liability. *See Berger v. Weber*, 411 Mich. 1, 15, 303 N.W.2d 424, 426 (1981). But again, any benefit to society would be lost should the child postpone asserting a loss of parental consortium claim.

While the Wisconsin court did not discuss the possibility of multiple lawsuits in *Theama* (because the claims of the children had been joined with those of their parents), *see Theama*, 117 Wis.2d at 525–26, 344 N.W.2d at 521–22, the court's reasons for recognizing the loss of parental consortium cause of action clearly contemplate that any children's claims would be litigated in the same lawsuit as those of the injured parent. Discussing the benefits of recovery for this type of claim, the court said:

> [W]e believe that money may indeed ease the child's adjustment to such a loss, rather than merely ensuring that he or she becomes a wealthy individual upon reaching majority, and may also aid in ensuring the child's continued normal and complete mental development into adulthood.

*Id.* at 523, 344 N.W.2d at 520. Likewise, the court predicted that:

> [W]e believe that any burden to society is offset by the benefit to the child, who through compensation may be able to adjust to his or her loss with stability. Ultimately, society will benefit as well, since ideally the child will become a normal adult who is capable of functioning as such in his or her own social setting.

*Id.* at 525, 344 N.W.2d at 521. Obviously, the full benefit of any award could not be realized by a child who delayed seeking compensation until after the principal action had been concluded.

Having surveyed the law in Wisconsin and in the other jurisdictions which recognize a child's cause of action for loss of a parent's society and companionship and having examined the express and implied positions of those jurisdictions on the issue of joinder, this court believes that, if the Wisconsin Supreme Court were ruling on this issue, it would require children to join their loss of parental consortium claims with those of their injured parent, if feasible. Under the facts of the instant case, this court need not rule that there are no circumstances under which a child may bring a separate claim. It would be possible to promote the policy considerations explained above and still allow a child to commence a separate action so long as the child's action is filed at a time when a court could decide whether consolidation or joinder with the principal action was warranted.

The Iowa Supreme Court, which appears to have addressed the joinder issue more extensively than any other court, has suggested that, in a situation in which the injured parent has already commenced an action omitting the claims of a child, it can be inferred that the parent has elected against representing the child's interests. Under such circumstances the Iowa court would allow the child to commence his or her own action subject to consolidation or joinder with that of the parent. *See Nelson v. Ludovissy*, 368 N.W.2d 141, 146 (Iowa 1985). Thus, by implication, the child would have to assert the loss of parental consortium claim at a time when joinder or consolidation would still be possible.

■ Iowa and the five other jurisdictions requiring parents and children to join their claims in one lawsuit qualify this rule by adding the phrase "if feasible."[9] If a claim is brought separately, the burden is on the consortium claimant to establish that it was impossible, impractical or not in

**9.** The Iowa court, for example, ruled that joinder was not feasible in a situation where the principal case had been commenced and had proceeded to judgment before Iowa recognized the child's cause of action. *See, e.g., Beeck v. S.R. Smith Company*, 359 N.W.2d 482, 254–55 (Iowa 1984). *But see Bryan v. Hall*, 367 N.W.2d

251, 254–55 (Iowa 1985) (granting summary judgment in favor of defendant where loss of parental consortium cause of action was judicially recognized during pendency of case, yet child made no attempt to assert claim before judgment was entered in the principal action).

the child's best interest for his or her claim to be joined with those of the injured parent. *See Nelson v. Ludovissy,* 368 N.W.2d 141, 146 (Iowa 1985); *Madison v. Colby,* 348 N.W.2d 202, 209 (Iowa 1984).

■ In the instant case the plaintiffs have made no showing that joinder of their claims with those of their father was not feasible. Likewise, they have not shown that any special circumstances warrant carving out an exception in their case.[10] Thus, because Kimberly and Ronald Huggins have not met their burden of showing that joinder was not feasible, the general rule requiring joinder or consolidation of a minor's loss of parental consortium claims must be applied. As a result, the plaintiffs are barred from maintaining their claims in this lawsuit which was commenced after the entry of final judgment in their father's case. Under these circumstances, The Sea Insurance Company, Ltd. is entitled to summary judgment as a matter of law.

### ORDER

For the reasons discussed above, the court ORDERS that the defendant's Motion for Summary Judgment (filed June 28, 1988) IS GRANTED. Judgment will be entered in favor of the defendant, The Sea Insurance Company, Ltd., on all the plaintiffs' claims.

IT IS FURTHER ORDERED that the plaintiffs' Motion for Partial Summary Judgment (filed July 6, 1988) IS DENIED.

IT IS FURTHER ORDERED that this action IS DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that, pursuant to Federal Rule of Civil Procedure 58, the Clerk of Court shall enter final judgment as a separate document. The judgment shall state that:

> This action came on for a hearing on briefs before the Court, Honorable Thomas J. Curran, District Judge, presiding, and the issues having been duly heard and a decision having been duly rendered,

IT IS ORDERED AND ADJUDGED:
that the plaintiffs Kimberly Huggins, by her next friend, Alice Huggins, and Ronald Huggins, by his next friend, Alice Huggins, take nothing from the defendant, The Sea Insurance Company, Ltd., and that this action is dismissed on its merits.

Done and Ordered.

---

10. The court notes that the record submitted from the state court case does not reveal any attempt to appoint a guardian ad litem for Kimberly or Ronald Huggins. And although in Wisconsin a guardian ad litem must be appointed before a minor commences any legal action, *see* Wis.Stat. § 803.01(3), the failure to appoint a guardian does not justify nonjoinder because it is a parent's duty to preserve a child's claim by timely action. *See Landreth v. United States,* 850 F.2d 532, 534 (9th Cir.1988), *cert. denied,* — U.S. ——, 109 S.Ct. 866, 102 L.Ed.2d 990 (1989).