Maurice G. DeLOACH, a minor by his parents, Glen M. and Alecia DeLOACH, Appellant

v.

COMPANHIA de NAVEGACAO LLOYD BRASILEIRO, Appellee in 85–1200.

and

Maurice G. DeLOACH, a minor by his parents, Glen M. and Alecia DeLOACH, Appellant

v.

MARKIM CRANE RENTAL, a DIVISION OF MARVIN GROUP, INC., Appellee in 85–1517.

Nos. 85–1200, 85–1517.

United States Court of Appeals, Third Circuit.

Argued Nov. 4, 1985.

Decided Jan. 31, 1986.

Louis Samuel Fine (argued), Sarah Hohenberger, Fine and Staud, Philadelphia, Pa., for appellants.

Thomas Lane Anderson (argued), Robert C. Mickle, Jr., Rawle & Henderson, Philadelphia, Pa., for appellee, Companhia de Navegacao Lloyd Brasileiro.

James M. Marsh, Perry S. Bechtle, Samuel J. Pace, Jr., for appellee, Markim Crane Rental, a div. of Marvin Group, Inc.; LaBrum and Doak, Philadelphia, Pa., of counsel.

Before SEITZ, WEIS, and ROSENN, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

In these cases the minor plaintiff seeks damages for the loss of companionship and guidance of his father who was injured in the course of his employment as a longshoreman. The district court denied the claims, finding them unsupported by authoritative precedent in either maritime or common law. We will affirm.

The two separate suits filed by the minor plaintiff were dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim. These appeals followed.

The plaintiff's father, Glen M. DeLoach, sustained severe injury to his shoulder when he was struck by a crate that fell while being lifted by a crane owned and leased by the defendant Markim Crane Rental. The accident occurred on January 6, 1984 in the port of Philadelphia aboard a ship owned and operated by the defendant, Companhia de Navegacao Lloyd Brasileiro.

Glen DeLoach and his wife filed suits against both defendants seeking damages for his personal injuries and his spouse's loss of consortium. The minor plaintiff, age 5, filed separate suits against each defendant. He asserted claims for loss of parental consortium, care, love, companionship, playtime, guidance, educational help, financial and nonfinancial support, services, aid and comfort of his father, and mental distress occasioned by his father's disability.

In passing on the minor plaintiff's claim against the shipowner, the court found that the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. §§ 901, et seq., provided no cause of action for loss of parental consortium. The district judge then examined the general maritime law. Finding no authoritative precedent in that area, he looked to the common law where the overwhelming majority of states have rejected similar claims by children of injured parents. Persuaded by the state courts' reasoning, the district court concluded that the plaintiff's claim against the ship owner was not cognizable in maritime law.

The child's claim for mental distress was denied as well. The minor plaintiff had not witnessed the accident, nor was he near the scene; therefore, even under state court decisions allowing recovery for emotional shock by a bystander, the plaintiff's claim was not viable. The district court made similar rulings on both counts of the suit against the crane owner.

### I.

On appeal, plaintiff does not dispute the district court's conclusion that he cannot recover against the ship owner under the Longshoremen's and Harbor Workers' Act; therefore, the focus of our inquiry is on general maritime law. We are urged to construe maritime law in a humanitarian fashion and follow the growing minority of state courts which allow claims for deprivation of parental consortium.

Plaintiff relies heavily on *Sea Land-Services, Inc. v. Gaudet,* 414 U.S. 573, 94 S.Ct.

806, 39 L.Ed.2d 9 (1974). In that case, the Court permitted the widow of a longshoreman who had died from his injuries to maintain a maritime wrongful death action and recover for loss of consortium, despite the fact that during his lifetime the decedent had settled his own claim for personal injuries.

The Court further extended general maritime law in *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980) by allowing the wife of an injured longshoreman to recover damages for the loss of his society. The Court concluded that the deprivation suffered by a longshoreman's spouse is compensable under general maritime law whether his injuries are fatal or nonfatal, notwithstanding that such damages are precluded by the Death on the High Seas Act and the Jones Act. In coming to that decision, the Court relied on the holdings of the vast majority of states that a spouse could recover for loss of society.

The Supreme Court has not addressed the rights asserted by the minor plaintiff here, but in *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 479 (5th Cir. 1984), a court of appeals rejected recovery for loss of parental consortium in a Jones Act case. Finding no authorization in the statute, the court relied on the "overwhelming majority of the courts" that had denied such claims under state tort law. However, a district court, influenced by a state statute authorizing such recovery, did entertain children's suits for loss of parental services under general maritime law in *Kelly v. T.L. James Co., Inc.*, 603 F.Supp. 390 (W.D.La.1985).

In this case the district court recognized that where the statutory or general maritime law does not provide clear precedent, courts may look to the prevailing common law. *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980). Until 1980 the state courts were unanimous in denying societal claims by children, but in that year Massachussetts abandoned its earlier position and allowed recovery in *Ferriter v. Daniel O'Connell's Sons, Inc.*, 381 Mass. 507, 413 N.E.2d 690 (1980). In the next few years five other states followed that lead: Michigan, Iowa, Wisconsin, Washington, and Vermont.[1]

The reasoning of those cases, however, has not convinced other courts that have confronted the issue since 1980. Florida, New York, Oregon, Georgia, North Dakota, Minnesota, Texas, and Illinois, among others,[2] continue to deny recovery, adhering to the rule previously announced by the courts in some twenty states. The Restatement (Second) of Torts § 707(a) as revised in 1969, also did not recognize liability for the loss suffered by children of negligently injured parents. *See* Annot. 11 A.L.R. 4th 549 (1982).[3]

---

1. *See Berger v. Weber*, 411 Mich. 1, 303 N.W.2d 424 (Mich.1981); *Weitl v. Moes*, 311 N.W.2d 259 (Iowa 1981), *overruled in part, Audubon-Exira Ready Mix, Inc. v. Illinois Central Gulf R.R. Co.*, 335 N.W.2d 148 (Iowa 1983) (claim permitted statutorily, not under *Weitl's* common law theory); *Theama v. City of Kenosha*, 117 Wis.2d 508, 344 N.W.2d 513 (Wis.1984); *Ueland v. Reynolds Metals Co.*, 103 Wash.2d 131, 691 P.2d 190 (Wash.1984); *Hay v. Medical Center Hospital of Vermont*, 145 Vt. 533, 496 A.2d 939 (1985).

2. *See Zorzos v. Rosen*, 467 So.2d 305 (Fla.1985); *DeAngelis v. Lutheran Medical Center,* 84 A.D.2d 17, 445 N.Y.S.2d 188 (1981), *aff'd* 58 N.Y.2d 1053, 462 N.Y.S.2d 626, 449 N.E.2d 406 (1983); *Norwest v. Presbyterian Intercommunity Hospital*, 293 Or. 543, 652 P.2d 318 (1982); *W.J. Bremer Co., Inc. v. Graham*, 169 Ga.App. 115, 312 S.E.2d 806 (1983); *Morgel v. Winger*, 290 N.W.2d 266 (N.D.1980); *Salin v. Kloempken*,

322 N.W.2d 736 (Minn.1982); *Bennight v. Western Auto Supply Co.*, 670 S.W.2d 373 (Tex.App. 1984); *Mueller v. Hellrung Constr. Co.*, 107 Ill. App.3d 337, 63 Ill.Dec. 140, 437 N.E.2d 789 (1982).

3. Scholarly comment, both before and after 1980, generally favored the extension of liability in such circumstances. *See, e.g.,* Love, Tortious Interference with the Parent-Child Relationship: Loss of an Injured Person's Society and Companionship, 51 Ind.L.J. 590 (1976); Note, The Child's Right to Sue for Loss of a Parent's Love, Care, and Companionship Caused by Tortious Injury to the Parent, 56 B.U.L.Rev. 722 (1976); Note, The Child's Claim for Loss of Consortium Damages: A Logical and Sympathetic Appeal, 13 San.Diego L.Rev. 231 (1975); Cooney & Conway, The Child's Right to Parental Consortium, 14 J.Mar.L.Rev. 341 (1981). The foregoing is

Although common law and statutory differences among the states have played a role in the results reached in various cases, major reasons cited both for and against recognition of the cause of action fall into frequently repeated patterns.

Courts favoring the new claim stress the similarity to spousal consortium, the inconsistency of recognizing loss of services of a deceased parent under wrongful death statutes but not permitting recovery when an injured parent survives, and an assumed need to compensate for an acknowledged loss to the children.

Those courts brush aside such countervailing considerations as increased litigation and insurance costs, finding them speculative and insufficient to prevent creation of a new cause of action. They also point out that courts presently award monetary damages for such intangibles as emotional distress as well as pain and suffering. Declining to await legislative action, the courts that have adopted the new theory of recovery have relied on their duty, as they perceive it, to mold the common law to meet society's needs.

The courts refusing to recognize the children's claims question the advisability of equating parental society with a monetary value. In addition, they point to the difficulties inherent in defining the limits of the new right (*e.g.*, whether it would apply only to minor children, whether it would extend to those standing *in loco parentis*), and note the probable increased insurance costs and added burden on the courts. A number of the courts also believe that this issue, essentially one of policy, should be resolved by the legislature.

There is room to question the desirability of a court's decision to create a new cause of action without adequate demonstration of both need and cost. Curiously, with respect to increased costs of administering the claims, both the courts which dismiss that factor as insubstantial, as well as those which use it as an argument against recognition of a new cause of action, do so

without any empirical data or statistical projections. In a concurring opinion, one judge has acknowledged that legislatures possess superior resources with which to weigh all potentially affected interests, *Norwest v. Presbyterian Intercommunity Hospital*, 293 Or. 543, 652 P.2d 318, 333 (Tanzer, J. *concurring*).

The majority in *Norwest* emphasized that in tort law, negligence generally imposes an obligation to compensate only the person immediately injured, not all those who predictably suffer loss as a consequence of the injury. Analogies to the existing exceptions to that principle—spousal consortium, parents' actions for their children's injuries, and statutory wrongful death damages—were considered inadequate justification for further expansion to include a child's consortium claim.

Other courts have also questioned the use of spousal consortium as support for a child's right of action, pointing out the differing nature of the relationship. Those judges also doubt the wisdom of earlier decisions attempting to promote equality of treatment by extending the right of consortium to the wife from its common law origins with the husband. Because the husband's right is a "historical curiosity", it has been suggested that the better way to achieve equality would be the abolition of consortium for both spouses. *See Berger v. Weber*, 303 N.W.2d at 431 (Levin, J. *dissenting*).

■ The arguments on both sides of the issue have merit, but unquestionably as the common law now stands, the overwhelming majority of the states have declined to allow recovery by children for the loss of companionship caused by negligent injury to their parents. Plaintiff therefore derives no significant support from that source of contribution to maritime law.

■ Our inquiry is not at an end, however. If the common law denies recovery, we must decide whether adequate reason

but a partial listing of the extensive bibliography on the issue. *See also* W. Prosser & W.

Page Keeton, The Law Of Torts § 125 at 935 (5th ed. 1984).

exists for an admiralty court to allow the claim nevertheless. *Igneri v. Cie. de Transports Oceaniques,* 323 F.2d 257, 260 (2d Cir.1963), *overruled on other grounds, American Export Lines, Inc. v. Alvez,* 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980). After careful consideration, we conclude that there is not sufficient justification for the suggested expansion of maritime law.

Unlike the extension of consortium from husband to wife, which was accomplished within fairly well established bounds, the creation of an analogous right in children raises a host of easily foreseeable problems, and no doubt many unexpected ones as well. For example, should an award be confined to minor children, should it be made to children as a class or individually, and is it appropriate only where the parent is severely injured. It may well be that a longshoreman kept at home by injuries of a less serious nature may be able to devote more time to the rearing of his children than if he suffered no disability and was required to spend most of his day on the job.

Furthermore, if one accepts the premise that money may compensate for the loss of the love and companionship of a parent—a most questionable concept even in today's materialistic society [4]—it is not readily apparent why the line should be drawn at the parent-child relationship. In many instances the child may have received his rearing from grandparents, uncles and aunts, siblings, or friends. The loss a child sustains through injury to any of those persons would be no less severe than if they had been his natural parents. Denial of a cause of action in those circumstances would be arbitrary. Once the nature of the limitation is recognized as being arbitrary, it would appear that the better policy is to draw the line at the spousal relationship, an area which is more readily defined and confined.

To the extent that any recovery of the child is based on economic loss resulting from his parent's inability to earn money, the award would duplicate damages the injured parent himself is entitled to recover from the tortfeasor.

We are also concerned with maintaining logical limits on recovery by one who suffers only indirect injury. The historical support that exists for spousal consortium does not extend to other forms of indirect injury. Courts have traditionally recognized that liability for negligence must have limits—arbitrarily selected but necessary, nevertheless. For example, an employee deprived of his livelihood because of injury to his employer has no right to recover from a tortfeasor for this tangible and calculable loss.[5]

Nor should we overlook the economic effects of the creation of this new cause of action. Unlike those state courts which had no hesitancy in declining to await legislative determination of the basic policy questions, we feel constrained by Congress's demonstrated interest in regulating the liability of stevedores and shipowners for injuries to longshoremen. The legislative history of the 1972 amendments to the Act addressing that concern indicates that they were the result of compromise and concession between the competing interests.

---

4. In denying recovery the California Supreme Court said "social policy must at some point intervene to delimit liability." *Borer v. American Airlines, Inc.,* 19 Cal.3d 441, 446, 138 Cal. Rptr. 302, 305, 563 P.2d 858, 861 (1977). "[M]onetary compensation will not enable plaintiffs to regain the companionship and guidance of a mother.... To say that plaintiffs have been 'compensated' for their loss is superficial; in reality they have suffered a loss for which they can never be compensated; they have obtained, instead, a future benefit essentially unrelated to that loss." *Id.* at 447, 138 Cal.Rptr. at 306, 563 P.2d at 862.

5. This is hardly a fanciful concern. Members of a judge's staff, for example, would lose their positions if the judge were severely injured and thereby forced to retire. Similarly, employees of a small business might find themselves without a job if an injury incapacitated the sole proprietor whose skill or specialized knowledge was essential to the operation of the enterprise. It is highly questionable that the employees' calculable loss would be any less than that of the child whose parent may be unable to work or play, but may have more time to offer guidance and companionship.

Although the Supreme Court in *Gaudet* and *Alvez* apparently did not believe that recognizing a right of action for spousal consortium would disturb the balance that Congress had struck, we see a substantial distinction in the vague and logically expansive right asserted here. In this context, too, the special solicitude of the maritime law for "those men who under[take] to venture upon hazardous unpredictable sea voyages," *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 387, 90 S.Ct. 1772, 1780, 26 L.Ed.2d 339 (1970), should be tempered by the congressional provision of remedies for injured longshoremen who do not venture on such voyages.

Consequently, we conclude that maritime law does not grant children a right to recover for the loss of society and companionship of their parent longshoreman who has been injured by the negligence of a shipowner.

## II.

◼ Plaintiff also seeks damages for mental distress caused by "the constant exposure to the crippling and deforming injury of his father." The plaintiff did not witness the accident, nor was he in the area at the time it occurred.

Again, no federal statutory or decisional law provides for such a cause of action.[6] Some states allow recovery where the plaintiff either witnesses the accident from outside the "zone of danger" or comes on the scene soon after it and while the injured person is still present. *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979); *Dziokonski v. Babineau*, 375 Mass. 555, 380 N.E.2d 1295 (1978); *Dillon v. Legg*, 68 Cal.2d 728, 69 Cal.Rptr. 72, 441 P.2d 912 (1968). This, however, is as far as state courts have gone. *See also* Prosser and Keaton, § 54 at 359.

The plaintiff's claim for emotional injury does not come within even the most expansive holdings of a few state courts. The common law provides no support for the plaintiff's maritime claim, nor do we per-

ceive any reason why the maritime law should venture into these unchartered waters that state courts have expressly declined to enter. Thus, we conclude that the trial court did not err in dismissing the plaintiff's emotional distress count for failure to state a claim.

As noted earlier, in addition to the suit alleging negligence against the owner of the ship, plaintiff also filed a companion suit, consolidated on appeal, against the owner of the crane involved in the accident. Although that claim does not implicate the same congressional concern for the interests of stevedores and ship owners, the complaint otherwise presents essentially the same issues as the case against the defendant ship owner. Because we find no countervailing considerations which would justify a different conclusion, we reach the same result as to the plaintiff's claims against defendant Markim.

Accordingly, the judgment of the district court will be affirmed in each of the consolidated cases.

---

6. In *Sea-Land Services v. Gaudet*, 414 U.S. at 585–86 n. 17, 94 S.Ct. at 815 n. 17, the Supreme Court refused to permit recovery for mental anguish of the surviving spouse in a wrongful death action.