Robert Terry ROBERTSON and Tami Robertson, Individually and on Behalf of Their Minor Child, Teiea Paul Robertson

v.

ARCO OIL AND GAS COMPANY and Point Marine, Inc.

Civ. A. No. 89–2088.

United States District Court,
W.D. Louisiana,
Alexandria Division.

May 9, 1991.

Richard J. Arsenault, Neblett, Beard & Arsenault, Alexandria, La., William Henry Sanders, Jena, La., for plaintiffs.

John K. Leach, Christovich & Kearney, New Orleans, La., Bert M. Cass, Jr., Deutsch, Kerrigan & Stiles, New Orleans, La., for defendants.

Mark John Spansel, Adams & Reese, New Orleans, La., for Helmerich & Payne Intern. Drilling Co. and National Union Fire Ins. Co. of Pittsburgh, Pa.

## RULING

LITTLE, District Judge.

In this admiralty case, the court reconsiders the vitality and applicability of its holding in *Kelly v. T.L. James Co.*, 603 F.Supp. 390 (W.D.La.1985), that a child of an injured seaman possesses a cause of action under the general maritime law for loss of the seaman/parent's consortium. Because subsequent jurisprudence has eroded the principles underlying *Kelly*, the court holds that *Kelly* constitutes a "withered doctrine." [1]

Helmerich & Payne International Drilling Company (H & P) employed Robert Robertson as a roustabout and assigned him to work on a fixed offshore drilling platform owned by Atlantic Richfield Company (ARCO) pursuant to H & P's operating contract with ARCO. H & P owned the drilling rig utilized on the ARCO platform, and provided all the necessary personnel, including Robertson, to facilitate the rig's operation. ARCO also contracted with Point Marine, Inc. for its provision of offshore supply services related to the platform. Point Marine supplied the vessels and crew necessary to carry out the contract.

On the date of the plaintiff's accident, 19 December 1988, Robertson's supervisor ordered him to assist in moving an "MWD tool" from the rig deck to the Point Marine vessel M/V POINT T, docked adjacent to the platform. When, in the course of this assignment, Robertson and the other H & P workers were on the POINT T's deck, bundles of drilling pipe that H & P personnel had previously stowed on the deck suddenly became unbundled. Some of the pipes struck Robertson in his knee, causing him to sustain injuries.

Robertson, his wife, and his child brought this action against ARCO and Point Marine. They alleged both that Point Marine breached a duty to Robertson to provide a safe and seaworthy ship upon which to work, and that Point Marine was both negligent and strictly liable. The plaintiffs assert a claim against Point Marine on behalf of the child for the child's loss of parental consortium. [2] Point Marine moves to dismiss this consortium claim on the ground that no such claim is cognizable under the general maritime law.

Before we may decide whether the plaintiffs have stated a viable claim for loss of parental consortium, we first must determine the applicable law. In response to Point Marine's motion to strike plaintiff's request for a jury trial, plaintiff conceded that his claims were exclusively admiralty claims and therefore agreed that he is not entitled to a jury determination of those claims. Fed.R.Civ.P. 38(e). Plaintiff did not concede, however, Point Marine's premise that his claims were limited to those provided in 33 U.S.C. § 905(b), of the Longshore and Harbor Worker's Compensation Act. 33 U.S.C. § 901 et seq. (LHWCA). His brief in opposition to the instant motion does not delineate what sort of maritime claims he possesses that arise apart from the LHWCA.

 We note that the case clearly presents a matter cognizable under our admiralty jurisdiction and constitutes an action for negligence under general maritime

---

**1.** In this regard, it must be relegated to the status of the other withered doctrine of admiralty law. The court refers to the indemnity doctrine concerning suits brought under 33 U.S.C. § 905(b) espoused in *Ryan Stevedoring v. Pan-Atlantic S.S. Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956). *Gator Marine Service Towing, Inc. v. J. Ray McDermott & Co.*, 651 F.2d 1096, 1100 (5th Cir.1981).

**2.** In this ruling, "loss of consortium" means, roughly, loss of society, including love, affection, care, attention, companionship, comfort, and protection. *American Export Lines, Inc. v. Alvez*, 446 U.S. 274, 275, 100 S.Ct. 1673, 1674, 64 L.Ed.2d 284 (1980).

law. This conclusion may be reached by one of two methods of analysis. The first method turns on the exclusivity of the Outer Continental Shelf Lands Act. 43 U.S.C. § 1331 et seq. The accident occurred on the Outer Continental Shelf off the Louisiana Gulf Coast and plaintiff's employment was related to mineral extraction. Therefore, the case arises under and is governed by the Outer Continental Shelf Lands Act (OCSLA). *Mills v. Director, Office of Workers' Compensation Programs*, 877 F.2d 356, 362 (5th Cir.1989) (en banc); 43 U.S.C. § 1349. The Outer Continental Shelf Lands Act controls all cases arising out of mineral extraction operations conducted on the outer continental shelf. *Recar v. CNG Producing Co.*, 853 F.2d 367, 369 (5th Cir.1988).

Because OCSLA incorporates the provisions of the LHWCA with regard to employees working on fixed platforms, 43 U.S.C. § 1333(b), Robertson's right to recover from negligent vessel owners is limited to the provisions of the LHWCA. *Moore v. Phillips Petroleum Co.*, 912 F.2d 789, 791 (5th Cir.1990); *Fogleman v. Tidewater Barges, Inc.*, 747 F.Supp. 348, 355–56 (E.D.La.1990); *Stevenson v. Point Marine, Inc.*, 697 F.Supp. 285, 287 (E.D.La. 1988). 33 U.S.C. § 905(b).[3] Such an action, although arising by virtue of OCSLA, is a general maritime law claim because OCSLA merely limits an employee's right of recovery against the offending vessel to a maritime negligence action. *Stevenson*, 697 F.Supp. at 288. Section 905(b) does not

create a new or broader admiralty remedy; it merely codifies existing nonstatutory general maritime negligence remedies against vessel owners and extends them to offshore workers. *Richendollar v. Diamond M Drilling Co.*, 819 F.2d 124, 127–28 (5th Cir.1987) (en banc); *Russell v. Atlantic & Gulf Stevedores*, 625 F.2d 71, 72 (5th Cir.1980); *Parker v. South Louisiana Contractors, Inc.*, 537 F.2d 113, 117 (5th Cir.1976). Section 905(b) claims may be asserted only in admiralty. *Richendollar*, 819 F.2d at 127–28.[4]

The second method of analysis focuses upon the overlap between admiralty and OCSLA jurisdiction. The court has held that OCSLA jurisdiction exists. Because the accident occurred in navigable waters and was significantly related to a traditional maritime activity (the offshore supply of fixed drilling platforms), *Sisson v. Ruby*, —— U.S. ——, 110 S.Ct. 2892, 111 L.Ed.2d 292 (1990), the case is additionally cognizable under our admiralty jurisdiction. Where admiralty and OCSLA jurisdiction overlap, the case is governed by maritime law. *Recar*, 853 F.2d at 369; 28 U.S.C. § 1333.[5] Here, that law is the LHWCA. Robertson satisfies the test for LHWCA coverage independently of his status as an OCSLA worker because he is a worker that was injured on navigable waters. *Director, Office of Worker Compensation Programs v. Perini North River Assoc.*, 459 U.S. 297, 324, 103 S.Ct. 634, 650–51, 74 L.Ed.2d 465 (1983).[6] His maritime law

**3.** In this light, Robertson's claims against Point Marine based on the POINT T's unseaworthiness and of common law strict liability are of questionable vitality, given that section 905(b) expressly prohibits an action based on unseaworthiness. Moreover, strict liability concepts are inapplicable in section 905(b) actions, because strict liability is simply a species of unseaworthiness, recovery for which is expressly prohibited under the LHWCA. *Hess v. Upper Mississippi Towing Corp.*, 559 F.2d 1030, 1035 (5th Cir.1977). We do not determine this issue today, however.

**4.** We therefore do not face a case where the "saving to suitors" clause has application. 28 U.S.C. § 1333.

**5.** The court need not therefore reach the question of whether plaintiffs possess any sort of

Louisiana law remedies against Point Marine. *See Thompson v. Teledyne Offshore, Inc.*, 419 So.2d 822 (La.1982).

**6.** The parties do not urge that Robertson was a Jones Act seaman. 46 U.S.C.App. § 688. The court therefore analyzes the question of LHWCA coverage apart from the *Pizzitolo* framework. *Pizzitolo v. Electro Coal Transfer Co.*, 812 F.2d 977 (5th Cir.1987). Initially, the Fifth Circuit Court of Appeals reserved judgment on the question of whether *Pizzitolo* would apply in the case of "offshore oil workers ... who are covered under the LHWCA only by virtue of the OCSLA...." *Kerr–McGee Corp. v. Ma–Ju Marine Services, Inc.*, 830 F.2d 1332, 1336 (5th Cir.1987). Two years later, in a case where the plaintiff, who was a sandblaster/painter foreman assigned by his land-based employer to

remedy against the vessel owner therefore consists of a section 905(b) suit for negligence.

■ Having determined that Robertson's remedy, if any, against Point Marine arises by virtue of section 905(b), and that such an action is an action under the general maritime law, the court must now discern whether under that law Robertson's child possesses a claim for loss of consortium. In *Kelly*, this court concluded that children may possess a claim under the general maritime law for the loss due to non-fatal injury of their seaman/parent's consortium. *Kelly*, 603 F.Supp. at 393. Although we recognized that the Fifth Circuit Court of Appeals had explicitly rejected such a remedy in Jones Act cases, *Madore v. Ingram Tank Ships, Inc.*, 732 F.2d 475, 479 (5th Cir.1984), other concerns persuaded the court that such a remedy was consistent with *Sea–Land Services, Inc. v. Gaudet*, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), in which the Supreme Court held that "under the maritime wrongful-death remedy, the decedent's dependents may recover damages for their loss of support, services, and society...." *Gaudet*, 414 U.S. at 584, 94 S.Ct. at 814.[7] The Supreme Court subsequently extended the right to obtain damages for loss of consortium to dependents of injured longshoremen. *American Export Co. v. Alvez*, 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980).

Other courts have explicitly declined to follow this court's lead. In *DeLoach v. Companhia de Navegacao Lloyd Brasileiro*, 782 F.2d 438 (3d Cir.1986), the United States Court of Appeals for the Third Circuit declined to extend a maritime law cause of action to children for the loss of their injured parents' consortium. The court noted that the "overwhelming majority" of states have declined to permit such

recovery. The court further rejected the notion, implicit in *Kelly*, that an analogy may be drawn between a spouse's claim and a child's claim for loss of consortium, noting that it would be difficult to determine whether an award should be made to the class of children or to each child individually, and that it is possible that if the plaintiff is required to stay home due to injury, the amount of society the child would have with the plaintiff would actually increase. *DeLoach*, 782 F.2d at 442. The court noted that if children may recover for loss of society, no logical reason exists why friends, employees, and others with marginal relationships with a plaintiff should not also recover. *Id.* It also stated that, similarly, a child receives important guidance and nurturing from grandparents, uncles and aunts, siblings, and friends and therefore the same reasoning would permit the child's recovery if those persons are injured. *Id.* Finally, the court noted the special legislative balance achieved in the LHWCA and declined to act in an area so extensively regulated by Congress. *Id.*

Our brethren in the United States District Court for the Eastern District of Louisiana have similarly been unwilling to navigate in our wake on this issue. In *Murray v. Anthony J. Bertucci Const. Co.*, 745 F.Supp. 373 (E.D.La.1990), the court declined to extend a consortium award to a child whose father, a deckhand injured on a barge, sought recovery under the general maritime law. The court disagreed with our reliance on Louisiana's having extended such recovery, noting that "general maritime law is not founded on the substantive law of one state though it may be influenced by the common law." *Id.* at 374. Further, the court disagreed with our characterization of *Madore*, and held that the Fifth Circuit did not intend to limit its

---

work one week on a semi-submersible drilling rig, asserted both a Jones Act and section 905(b) claim, the court did not employ the *Pizzitolo* analysis in determining the applicable law. *New v. Associated Painting Services, Inc.*, 863 F.2d 1205 (5th Cir.1989). Fortunately, the court need not address this jurisprudentially divisive question. *See Legros v. Panther Services Group*,

*Inc.*, 863 F.2d 345 (5th Cir.1988), *vacated* 863 F.2d 355 (5th Cir.1989).

7. Among our concerns were that Louisiana law provided for such recovery, that such awards are not inherently speculative, and that the presumption of maritime law is "to give [rather] than to withhold the remedy...." *Kelly*, 603 F.Supp. at 392–93.

holding to Jones Act cases. The Eastern District court found the reasoning in *De-Loach* persuasive, and declined to make a consortium award to the child. *Id.* at 375.

Since the time this court rendered its decision in *Kelly*, the Supreme Court has further clarified the elements of recovery in a general maritime law action for wrongful death. *Miles v. Apex Marine Corp.,* — U.S. ——, 111 S.Ct. 317, 112 L.Ed.2d 275 (1990). Concerned with the preservation of uniformity among the Jones Act, the Death on the High Seas Act, 46 U.S.C. App. § 761 et seq., and the general maritime law, the *Miles* court limited the application of the *Gaudet/Alvez* right to recover consortium strictly to longshoremen injured in territorial waters. *Miles,* 111 S.Ct. at 325. Because Robertson was injured outside territorial waters, the reasoning of *Gaudet* and *Alvez* is inapplicable to him after *Miles.*

Although *Miles* eliminates the rights of seamen's dependents to recover for loss of consortium after the death of the seaman, several courts have construed *Miles* to be applicable in the case of non-fatal accidents suffered by seamen. *See Cater v. Placid Oil Co.,* 760 F.Supp. 568 (E.D.La.1991); *Breland v. Western Oceanic, Inc.,* 755 F.Supp. 718, 719 (W.D.La.1991); *Anglada v. Tidewater, Inc.,* 752 F.Supp. 722, 725 (E.D.La.1990). These courts have denied recovery to the seaman's dependents under the general maritime law for loss of consortium. The general rationale of these courts is that no logical reason exists to hold that dependents of seamen who are injured should receive a greater recovery than dependents of fatally injured seamen. *See e.g. Breland,* 755 F.Supp. at 719. Clearly the position of these courts is correct in light of *Miles;* it makes no sense to permit seamen's dependents to obtain recovery under the general maritime law sums that Congress consistently refused to provide them.

Because *Miles* explicitly limited the general maritime right to recover consortium to cases presenting the facts present in *Gaudet,* i.e. longshoremen injured or killed in territorial waters, *Alvez* provides Robertson's child with no basis for recovery under the general maritime law. The premise of the *Kelly* opinion, uniformity with *Gaudet,* is undercut. The maritime law had never extended a right to recover for loss of society before the Supreme Court rendered its opinion in *Gaudet. Alvez,* 446 U.S. at 280, 100 S.Ct. at 1676–77. The right to recover for loss of society under the general maritime law is today limited to the narrow facts of *Alvez* and *Gaudet.*[8] Secondly, the court remains of the view that uniformity is important in maritime law. It should be remembered that longshoremen, through section 905(b), may bring actions for maritime torts just as anyone else who is the victim of a maritime tort. *Pope & Talbot, Inc. v. Hawn,* 346 U.S. 406, 409, 74 S.Ct. 202, 204–05, 98 L.Ed. 143 (1953). Thus, the same damages principles applicable to seamen bringing general maritime law claims, as was the case in *Kelly,* apply equally to longshoremen's actions under section 905(b). As no other ability to recover loss of consortium damages in a general maritime tort action exists, the court can discern no reason to provide for such here. It must be remembered that the section 905(b) action is merely an action for maritime negligence, indistinguishable from an action by passengers of or visitors on a ship. We perceive no reason why the dependents of longshoremen should receive favorable treatment in this regard.

The court therefore declines to follow its holding in *Kelly.* We hold that a dependent of a longshoreman injured on the outer continental shelf may not recover under the general maritime law applicable through 33 U.S.C. § 905(b) damages for loss of the longshoreman's consortium.

Accordingly, the court GRANTS Point Marine's motion for summary judgment and DISMISSES the claim for loss of con-

---

**8.** It should be remembered that *Gaudet* is inapplicable on its facts today after the 1972 amendments to the LHWCA. *Gaudet* would possess only an action for negligence against the vessel owner, rather than for unseaworthiness. It is with that caveat that the *Miles* court "limits" *Gaudet.*

sortium of Teiea Paul Robertson with prejudice.