b.GONZALES, Judge.
In this case, the issue is whether the trial court correctly granted defendants’ motion for summary judgment, which dismissed the claims of the plaintiff for punitive and other nonpecuniary damages. We find that punitive damages and other types of nonpecuniary damages are not recoverable under general maritime law for deaths of seamen or longshoremen in state waters and that this case is governed by general maritime law, which preempts Louisiana state law.
*712 FACTS AND PROCEDURAL HISTORY OF THE CASE
Byron Joseph Boswell was a member of the crew of a twenty-three foot airboat modified with an environmental test drilling rig owned by Fugro Geosciences, Inc. and operated in the navigable waters of the United States.[2] On January 15, 1993, Mr. Boswell was working (as the sole operator) aboard the vessel in navigable state territorial waters on Taylor Bayou, near Port Arthur, Texas, when the vessel sank, and Mr. Boswell drowned.
Linda Kay Welch, as tutrix for Daylon Chase Boswell, filed suit against Fugro Geosciences, Inc. (Fugro), Signal Mutual Indemnity Association, Ltd. (Signal), Marshland Marine, and XYZ Insurance Company.[3]
The claims of Ms. Welch individually, and as tutrix for Kyler Welch, were dismissed with prejudice by this court in response to a writ application by Fugro and Signal. Welch v. Fugro Geosciences, Inc., 97 CW 0886 (La.App. 1 Cir. 8/26/97). This court also dismissed Ms. Welch’s claim as personal representative of Byron Joseph Boswell. Therefore, the only claim at issue is the claim by Ms. Welch for Daylon Chase Boswell, the minor child of Mr. Boswell and Ms. Welch.
|aMs. Welch originally alleged that the action was brought under 46 U.S.C.App. § 688, commonly known as the Jones Act, under the general maritime law, and under 28 U.S.C. § 1333, more particularly the “Savings to Suitors” clause. Ms. Welch asserted that the accident was caused by the negligence of the defendants and, further, that Fugro violated its warranty of seaworthiness to Mr. Boswell when it required him to work on and around the airboat with the modified drilling rig.
Ms. Welch also asserted claims for products liability, punitive damages under general maritime law, and strict liability under La. C.C. art. 2317.
Fugro and Signal answered the petition, generally denying the allegations and, further, asserting in the alternative that the damages alleged by the plaintiffs were caused solely by the fault and negligence of Mr. Boswell, or others for whom Fugro and Signal had no responsibility. Further, they asserted in the alternative that, in the event plaintiffs were found to have suffered damage as a result of the negligence of anyone for whom Fugro and Signal could or might be responsible, or because of the unseaworthiness of any vessel for which Fugro and Signal were responsible, all of which was specifically denied, the damages of plaintiffs were also caused by and/or contributed to by and/or aggravated by Mr. Boswell’s own negligence, and/or the negligence of others for whom Fugro and Signal were not responsible, and Fug-ro and Signal were entitled to have any award or recovery mitigated and reduced accordingly. They asked for judgment in their favor and that the petition be dismissed.
Fugro thereafter filed a motion for summary judgment seeking dismissal of plaintiffs’ claims for nonpecuniary damages, including punitive damages.
In a May 26, 1999 judgment, the trial court granted partial summary judgment in favor of Fugro and against the plaintiffs, *713 and the claims for all nonpecuniary damages, including punitive damages and consortium damages, were dismissed with prejudice. The parties agreed this was a final judgment under La. C.C.P. art. 1915(B).[4]
|4Ms. Welch appealed that judgment. She makes the following assignment of error:
The trial court erred in its judgment granting the motion for summary judgment by defendants/appellees that non-pecuniary damages, including punitive damages, cannot be recovered by plaintiffs/appellants in any of the claims made in the petition.
THE STANDARD OF REVIEW AND APPLICABLE LAW
Appellate courts review summary judgments de novo, using the same criteria applied by trial courts to determine whether summary judgment is appropriate. Reynolds v. Select Properties, Ltd., 93-1480 (La.4/11/94), 634 So.2d 1180, 1183; Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342, 345 (La.1991).
Maritime actions brought in state court are generally governed by federal maritime law. Miller v. American Dredging Co., 595 So.2d 615, 617 (La.1992), aff'd, 510 U.S. 443, 114 S.Ct. 981, 127 L.Ed.2d 285 (1994). State courts must apply the same law to a maritime claim that a federal court would apply had the case been filed in federal court. Prejean v. Industrial Cleanup, Inc., 98-0948 (La.12/1/98), 721 So.2d 1273, 1278. State law can sometimes be applied to maritime matters of local concern, but not if that state law conflicts with substantive maritime law. Miller, 595 So.2d at 617-619.
AVAILABILITY OF NONPECUNIARY DAMAGES IN A GENERAL MARITIME LAW ACTION UNDER 33 § 905(b)[5]
Plaintiff claims entitlement to nonpecu-niary damages based on Moragne v. States Marine Lines, Inc., 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), and Sea-Land 5Services, Inc. v. Gaudet, 414 U.S. 573, 94 S.Ct. 806, 39 L.Ed.2d 9 (1974), both of which involved deaths of longshoremen in state territorial waters. While it is uncontested that Mr. Boswell died in state territorial waters, defendants contest the *714 assertion that he was a longshoreman and allege, instead, that he was a seaman.
However, Fugro argues that even if Mr. Boswell were a longshoreman at the time of his death, Moragne and Gaudet do not provide for recovery of nonpecuniary damages. In Moragne, a longshoreman was killed while working aboard a vessel in state territorial waters. His widow filed suit in state court against the owner of the vessel to recover for wrongful death and for pain and suffering experienced by the decedent prior to his death. The Moragne court overruled prior cases and recognized a cause of action under the general maritime law for wrongful death in territorial waters, noting that this recognition of a right to recover for wrongful death under general maritime law would assure uniform vindication of federal policies. Moragne, 398 U.S. at 401, 90 S.Ct. at 1788.
In Gaudet, a longshoreman was severely injured aboard a vessel in Louisiana navigable waters. The longshoreman recovered for his disability, pain and suffering, and loss of earnings, but died shortly after the action was terminated. His widow brought a wrongful death action in state court, which was dismissed on the grounds of res judicata and failure to state a claim. The United States District Court for the Eastern District of Louisiana granted the defendant’s motion to dismiss the suit. The Court of Appeals for the Fifth Circuit reversed and remanded, holding that Mo-ragne gave Ms. Gaudet a compensable claim for her husband’s death. The United States Supreme Court granted certiora-ri, and the Gaudet court held:
A clear majority of States, on the other hand, have rejected such a narrow view of damages, and, either by express statutory provision or by judicial construction, permit recovery for loss of society. This expansion of damages recoverable under wrongful death statutes to include loss of society has led one commentator to observe that “[w]hether such damages are classified as ‘pecuniary,’ or recognized and allowed as nonpecuniary, the recent trend is unmistakably in favor of permitting such recovery.” Speiser Wrongful Death 218. Thus, our decision to permit recovery for loss of society aligns the maritime wrongful-death remedy with a majority of state wrongful-death statutes. But in any event, our decision is compelled if we are to shape the remedy to comport with the humanitarian policy of the |fimaritime law to show “special solicitude” for those who are injured within its jurisdiction. [Footnotes deleted.]
Gaudet, 414 U.S. at 587, 94 S.Ct. at 816.
However, in Miles v. Apex Marine Corp., 498 U.S. 19, 31-33, 111 S.Ct. 317, 325-326, 112 L.Ed.2d 275 (1990), the court held:
The holding of Gaudet applies only in territorial waters, and it applies only to longshoremen. Gaudet did not consider the preclusive effect of the Jones Act for deaths of true seamen. We do so now.
Unlike DOHSA, the Jones Act does not explicitly limit damages to any particular form. Enacted in 1920, the Jones Act makes applicable to seamen the substantive recovery provisions of the older FELA. See 46 U.S.C.App. § 688. FELA recites only that employers shall be liable in “damages” for the injury or death of one protected under the Act. 45 § 51. In Michigan Central R. Co. v. Vreeland, 227 U.S. 59, 33 S.Ct. 192, 57 L.Ed. 417 (1913), however, the Court explained that the language of the FELA wrongful death provision is essentially identical to that of Lord Campbell’s Act, § 9 & 10 Vict. ch. 93 (1846), the first wrongful death statute. Lord Campbell’s Act also did not limit explic *715 itly the “damages” to be recovered, but that Act and the many state statutes that followed it consistently had been interpreted as providing recovery only for pecuniary loss. Vreeland, 227 U.S., at 69-71, 33 S.Ct., at 195-196. The Court so construed FELA. Ibid.
When Congress passed the Jones Act, the Vreeland gloss on FELA, and the hoary tradition behind it, were well established. Incorporating FELA unaltered into the Jones Act, Congress must have intended to incorporate the pecuniary limitation on damages as well. We assume that Congress is aware of existing law when it passes legislation. See Cannon v. University of Chicago, 441 U.S. 677, 696-697, 99 S.Ct. 1946, 1957, 60 L.Ed.2d 560 (1979). There is no recovery for loss of society in a Jones Act wrongful death action.
The Jones Act also precludes recovery for loss of society in this case. The Jones Act applies when a seaman has been killed as a result of negligence, and it limits recovery to pecuniary loss. The general maritime claim here alleged that Torregano had been killed as a result of the unseaworthiness of the vessel. It would be inconsistent with our place in the constitutional scheme were we to sanction more expansive remedies in a judicially created cause of action in which liability is without fault than Congress has allowed in cases of death resulting from negligence. We must conclude that there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman.
Our decision also remedies an anomaly we created in [Mobil Oil Corp. v.] Higginbotham [436 U.S. 618, 98 S.Ct. 2010, 56 L.Ed.2d 581 (1978) ]. Respondents in that case warned that the elimination of loss of society damages for wrongful deaths on the high seas would create an unwarranted inconsistency between deaths in territorial waters, where loss of society was available under Gau-det, and deaths on the high seas. We recognized the value of uniformity, but concluded that a concern for consistency could not override [7the statute. Higginbotham, supra, 436 U.S., at 624, 98 S.Ct., at 2014. Today we restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under DOHSA, the Jones Act, or general maritime law.
Clearly, under Miles, there is no recovery by parents, spouses or children for loss of society in a general maritime action for wrongful death or injury to a Jones Act seaman. Foster v. Destin Trading Corporation, 96-0803 (La.5/30/97), 700 So.2d 199, 201 n. 1.
AVAILABILITY OF NONPECUNIARY DAMAGES TO A LONGSHOREMAN
Next, we must determine whether non-pecuniary damages are available to a longshoreman.
In Robertson v. Arco Oil and Gas Company, 766 F.Supp. 535 (W.D.La.1991), aff'd on other grounds, 948 F.2d 132 (5th Cir.1991), the court denied recovery of nonpe-cuniary damages by dependents of a longshoreman. The Robertson court found:
[T]he same damages principles applicable to seamen bringing general maritime law claims ... apply equally to longshoremen’s actions under section 905(b). As no other ability to recover loss of consortium damages in a general maritime tort action exists, the court can discern no reason to provide for such here. It must be remembered that the section 905(b) action is merely an action for maritime negligence, indistinguishable from an action by passengers of or visitors on a ship. We perceive no rea *716 son why the dependents of longshoremen should receive favorable treatment in this regard.
We hold that a dependent of a longshoreman injured on the outer continental shelf may not recover under the general maritime law applicable through 33 U.S.C. § 905(b) damages for loss of the longshoremen’s consortium.
Robertson, 766 F.Supp. at 539. See also, Hollie v. Consolidated Natural Gas Service Co., Inc., 1993 WL 22191 (E.D.La.1993) (It would be anomalous to allow the spouse of a longshoreman to recover for loss of society under general maritime law when the spouse of an injured seaman would be refused such recovery); accord Means v. Tidewater Grand Isle, Inc., 1993 WL 149073 (E.D.La.1993); accord Boudreaux v. Penrod Drilling Corporation, 1992 WL 245948 (E.D.La.1992).
| ^Uniformity has always been recognized as a driving principle in the development of maritime law. As noted by the court in Moragne:
Our recognition of a right to recover for wrongful death under general maritime law will assure uniform vindication of federal policies, removing the tensions and discrepancies that have resulted from the necessity to accommodate state remedial statutes to exclusively maritime substantive concepts. Such uniformity not only will further the concerns of both [DOHSA and the Jones Act] but also will give effect to the constitutionally based principle that federal admiralty law should be “a system of law coextensive with, and operating uniformly in, the whole country.”
398 U.S. at 401-402, 90 S.Ct. at 1788. (Citations and footnote omitted.)
A Louisiana state court has followed the federal courts’ lead in applying Miles in this very context. Vedros v. Public Grain Elevator of New Orleans, Inc., 620 So.2d 1376 (La.App. 4 Cir.1993), involved the death of a longshoreman from injuries received on state territorial waters and land. In Vedros, as in the present case, the plaintiff asserted a claim for nonpecuniary damages under Gaudet. The Vedros court found:
Although the Miles court did not reverse Gaudet or specifically limit it to its facts, it seems appropriate because it creates an anomaly in the law.
The need for uniformity in maritime law is recognized and was the overriding concern of the Miles court. Since Gau-det, the 1972 amendments to the LHWCA and the decision of the U.S. Supreme Court in Miles evidences the trend in federal jurisprudential and statutory law to bar claims for nonpecuniary loss.
Vedros, 620 So.2d at 1378.
Both Moragne and Gaudet involved the death of “Sieracki seamen,” longshoremen of the kind to whom the Supreme Court in Seas Shipping Co., Inc. v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), had extended a cause of action for unseaworthiness previously allowed only to true seamen. However, the longshoreman’s cause of action for unseaworthiness under Sieracki has been abolished: “In 1972, Congress amended the Longshore and Harbor Workers’ Compensation Act [citations omitted] to bar any recovery from shipowners for the death or injury of a longshoreman or harbor worker resulting from breach of the duty of seaworthiness.” Miles, 498 U.S. at 28, 111 S.Ct. at 323.
UThe Miles court was referring to the following language, which was added to 33 U.S.C. § 905(b) by the 1972 amendments: “The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred.”
*717 As stated in Miller v. American President Lines, Ltd., 989 F.2d 1450, 1459 (6th Cir.), cert. denied, 510 U.S. 915, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993), Gaudet has been condemned to a kind of legal limbo, inapplicable to its facts, yet not overruled.
Therefore, we find that the trial court was correct in ruling that nonpecuni-ary damages cannot be recovered for the death of a longshoreman injured in territorial waters and, further, that to allow such recovery would ignore the tide of decisions running against Gaudet and would represent conduct condemned by the Supreme Court in Moragne, “continued adherence to a rule unjustified in reason, which produces different results for breaches of duty in situations that cannot be differentiated in policy.” Moragne, 398 U.S. at 405, 90 S.Ct. at 1790.[6]
We also note that, although Ms. Welch alleged in her brief that she had a right to punitive damages under La. C.C. art. 2315.3, this substantive Louisiana law does not apply in this case because it is preempted by federal maritime law.
Therefore, for the foregoing reasons, the trial court judgment is AFFIRMED. Costs are assessed against the plaintiffs-appellants.
PETTIGREW, J., dissents and assigns reasons.

. The rig collected soil samples.

. The other plaintiff, Lisa Periera, individually and as tutrix for Brandon Boswell and as personal representative of Byron Joseph Boswell, reached a settlement with the defendants and is not a party to this appeal. Also, Marshland Marine and XYZ Insurance Company, defendants, are not a party to this appeal.

. Prior to the amendment of La. C.C.P. art. 1915(B) by Acts 1999, No. 1263, § 1, this agreement was allowed by law.

. 33 U.S.C. § 905(b) provides:
In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide ste-vedoring services no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel’s owner, owner pro hac vice, agent operator or charterer) or against the employees of the employer. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

. Summary judgments are only intended to decide legal issues. Although the trial court made no clear fact finding that the plaintiff was a longshoreman, we assume the parties agree to this fact. Otherwise, our opinion would be advisory in nature on nonestabl-ished facts.