[No. 50287-1. En Banc. November 8, 1984.]

SHELLEY M. UELAND, as *Guardian, Respondent,* v. PENGO HYDRA–PULL CORPORATION, ET AL, *Defendants,* REYNOLDS METALS COMPANY, ET AL, *Petitioners.*

*Ogden, Ogden & Murphy,* by *Steven A. Reisler,* for petitioners.

*Kleist, Davis & Arnold, Inc., P.S.,* by *Philip G. Arnold,* for respondent.

*Robert H. Whaley* and *Bryan P. Harnetiaux* on behalf of Washington Trial Lawyers Association, amici curiae for respondent.

PEARSON, J.—This case requires us to decide whether children have a separate cause of action for loss of parental

consortium[1] when a parent is injured through the negligence of another. We hold that, subject to the limitations set forth in this opinion, such actions may be brought in this state.

Eric Ueland, husband of Shelley Ueland and father of the two minor children, Kimberly and William Ueland, suffered severe and permanent mental and physical disabilities when struck by a metal cable during the course of employment as a lineman for Seattle City Light. The Uelands were separated and seeking a divorce at the time of the accident. The minor children, through their mother as guardian, bring this action for loss of consortium with their father as a result of his injuries. Petitioners Reynolds Metals Company and North Coast Electric Company moved in Superior Court for dismissal of this claim. The motion was denied. A motion for discretionary review of this decision was granted by the Court of Appeals and the case was subsequently transferred to this court for disposition on the merits.

This court first addressed the issue of parental consortium in *Erhardt v. Havens, Inc.,* 53 Wn.2d 103, 330 P.2d 1010 (1958). The court in *Erhardt* declined the appellant's invitation to extend the common law to allow such an action. In support of its decision, the court noted that no jurisdiction had adopted such a cause of action and, indeed, even a wife had no right of action for the loss of consortium as a result of the negligent injury of her husband. *See Ash v. S.S. Mullen, Inc.,* 43 Wn.2d 345, 261 P.2d 118 (1953), *overruled in Lundgren v. Whitney's Inc.,* 94 Wn.2d 91, 614 P.2d 1272 (1980). The court also stated that it was unnec-

---

[1]Loss of consortium is typically thought of as a "loss of society, affection, assistance and conjugal fellowship, and . . . loss or impairment of sexual relations" in the marital relationship. Black's Law Dictionary 280 (5th ed. 1979). In the parent–child relationship the term consortium refers to the "loss of a parent's love, care, companionship and guidance . . ." Note, *The Child's Right To Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent,* 56 B.U. L. Rev. 722, 723 (1976). It is consistent with this second definition that we use the term "parental consortium".

essary to extend the common law since the defendant in this case conceded the children's loss was a proper item of damage in the father's potential recovery. This concession by the defendant was not necessarily based on a sound reading of the law; however, the court did not further explore the issue. Although the court did not adopt the cause of action sought by the appellants, it indicated a willingness to do so when faced with the proper case. *Erhardt,* at 106.

Twenty–one years later, the Court of Appeals addressed the same issue and it too declined to adopt the cause of action. *Roth v. Bell,* 24 Wn. App. 92, 600 P.2d 602 (1979). In *Roth,* three minor children sought damages "for loss of companionship, advice, destruction of the parent–child relationship, and future support, and emotional injury" after their mother suffered a severe stroke allegedly caused by her ingestion of birth control pills manufactured by one of the defendants. *Roth,* at 93. After providing a good discussion of the development of consortium actions in this state, the court in *Roth* held that adoption of such a cause of action is an issue of public policy and should be left to the Legislature. *Roth,* at 101.

In the present case the trial judge apparently thought the viability of the *Roth* decision was in question after this court's decisions in *Harbeson v. Parke–Davis, Inc.,* 98 Wn.2d 460, 656 P.2d 483 (1983) and *Lundgren v. Whitney's Inc., supra.* In part, *Harbeson* can be interpreted as allowing parents to recover for loss of consortium with their child as a part of their wrongful birth action. *Harbeson,* at 475. *Lundgren* created a cause of action for loss of consortium for wives whose husbands are injured by the negligent acts of another. Although neither *Harbeson* nor *Lundgren* directly affects the Court of Appeals decision in *Roth,* the trial judge interpreted those decisions as showing this court's willingness to adopt new rights of action for loss of consortium.

Through legislative act and court decision this state recognizes a wide range of consortium recovery rights. Parents

may recover for loss of consortium for injury to a child. RCW 4.24.010.[2] A spouse may bring an action for loss of consortium when the other spouse is injured. *Hawkins v. Front St. Cable Ry.,* 3 Wash. 592, 28 P. 1021 (1892) (allowing a husband to recover for loss of an injured wife's "services" in the household); *Lundgren v. Whitney's Inc., supra* (allowing a wife to recover for loss of consortium when her husband is injured). A child, parent or spouse can bring an action for wrongful death of the other where loss of consortium is an element of the recovery. RCW 4.20.020.[3]

The state of the law in this area is anomalous in that a child may recover for loss of consortium if the parent dies as a result of another's negligence, but not if the severely injured parent remains alive but in a vegetative state. Surely the child's loss of the parent's love, care, companionship and guidance is nearly the same in both situations. Also, permitting a husband or wife but not children to recover for loss of consortium erroneously suggests that an adult is more likely to suffer emotional injury than a child. *See* Note, *The Child's Right To Sue for Loss of a Parent's Love, Care and Companionship Caused by Tortious Injury to the Parent,* 56 B.U. L. Rev. 722, 742 (1976).

The stage was set for the adoption of the child's cause of action in 1916, when Dean Pound of Harvard Law School wrote:

---

[2]RCW 4.24.010 provides in relevant part:

"The mother or father or both may maintain an action as plaintiff for the injury or death of a minor child . . .

". . .

"In such an action, in addition to damages for medical, hospital, medication expenses, and loss of services and support, damages may be recovered for the loss of love and companionship of the child and for injury to or destruction of the parent–child relationship in such amount as, under all the circumstances of the case, may be just."

[3]RCW 4.20.020 provides in relevant part:

"Every such action shall be for the benefit of the wife, husband, child or children of the person whose death shall have been so caused. . . .

"In every such action the jury may give such damages as, under all circumstances of the case, may to them seem just."

> As against the world at large a child has an interest . . . in the society and affection of the parent, at least while he remains in the household. But the law has done little to secure these interests. At common law there are no legal rights which protect them. . . .
>
> . . .
>
> It will have been observed that legal securing of the interests of children falls far short of what general considerations would appear to demand.

(Footnote omitted.) Pound, *Individual Interests in the Domestic Relations*, 14 Mich. L. Rev. 177, 185–86 (1916).

Prosser also criticized this void in the law which has left the child uncompensated for the loss of a parent's love and guidance due to the negligent injury of the parent.

> The interest of the child in proper parental care . . . has run into a stone wall where there is merely negligent injury to the parent. . . .
>
> It is not easy to understand and appreciate this reluctance to compensate the child who has been deprived of the care, companionship and education of his mother, or for that matter his father, through the defendant's negligence. This is surely a genuine injury, and a serious one, which has received a great deal more sympathy from the legal writers than from the judges.

(Footnotes omitted.) W. Prosser, *Torts* § 125, at 896 (4th ed. 1971).

Petitioners point out that numerous jurisdictions have denied this cause of action. *See* Annot., *Child's Right of Action for Loss of Support, Training, Parental Attention, or the Like, Against a Third Person Negligently Injuring Parent*, 11 A.L.R.4th 549 (1982). However, the emerging trend is to recognize the child's cause of action. *See Rosen v. Zorzos,* 449 So. 2d 359 (Fla. Dist. Ct. App. 1984) (currently on appeal to the Florida Supreme Court); *Theama v. Kenosha,* 117 Wis. 2d 508, 344 N.W.2d 513 (1984); *Weitl v. Moes,* 311 N.W.2d 259 (Iowa 1981); *Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424 (1981); *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690 (1980). We find more persuasive the reasoning found in these decisions recognizing the cause of action.

Petitioners draw our attention to numerous arguments against recognizing the cause of action which we now address. First is that creation of such a cause of action lies within the Legislature's, not the court's domain. In support of this argument petitioners cite the Court of Appeals decision in *Roth v. Bell,* 24 Wn. App. 92, 600 P.2d 602 (1979), where the court held adoption of such a cause of action is a legislative, not a judicial, function. *Roth,* at 101.

■ ■ In *Lundgren v. Whitney's Inc.,* 94 Wn.2d 91, 614 P.2d 1272 (1980), where we held a woman has a right of action for loss of consortium when her husband is negligently injured, a similar argument was made. In answer to the argument that changes in the common law rule on loss of consortium should be left to the Legislature, we stated in *Lundgren*:

> [T]his contention is in effect
> a request that courts abdicate their responsibility for the upkeep of the common law. . . .
>
> . . .
>
> *Rodriguez v. Bethlehem Steel Corp.,* 12 Cal. 3d 382, 393–94, 525 P.2d 669, 115 Cal. Rptr. 765 (1974).
> Indeed, we have often discharged our duty to reassess the common law and alter it where justice requires. *Grimsby v. Samson,* 85 Wn.2d 52, 59–60, 530 P.2d 291, 77 A.L.R.3d 436 (1975) . . .

*Lundgren,* at 95.

When justice requires, this court does not hesitate to expand the common law and recognize a cause of action. In the present case, just as in *Lundgren,* to defer to the Legislature in this instance would be to abdicate our responsibility to reform the common law to meet the evolving standards of justice.

We next address petitioners' second argument, that allowing the action would result in multiple lawsuits. Petitioners are correct to point out that if this cause of action is adopted there could be as many claims as the injured parent has children. This argument is cited by a number of courts as one reason for denying the cause of action. *Jeune v. Del E. Webb Constr. Co.,* 77 Ariz. 226, 269 P.2d 723

(1954); *Borer v. American Airlines, Inc.,* 19 Cal. 3d 441, 563 P.2d 858, 138 Cal. Rptr. 302 (1977); *Halberg v. Young,* 41 Hawaii 634 (1957); *Hoffman v. Dautel,* 189 Kan. 165, 368 P.2d 57 (1962); *Russell v. Salem Transp. Co.,* 61 N.J. 502, 295 A.2d 862 (1972); *Pleasant v. Washington Sand & Gravel Co.,* 262 F.2d 471 (D.C. Cir. 1958).

The Michigan Supreme Court, in its opinion adopting this cause of action, addressed this "multiplicity" issue as follows:

> So too when a new cause of action is created, litigation may be increased. However, as the Court of Appeals aptly pointed out, "[t]he rights of a new class of tort plaintiffs should be forthrightly judged on their own merits, rather than engaging in gloomy speculation as to where it will all end". (Citation omitted.) 82 Mich App 199, 210.

*Berger v. Weber,* 411 Mich. 1, 14–15, 303 N.W.2d 424 (1981).

In *Weitl v. Moes,* 311 N.W.2d 259 (Iowa 1981), the Iowa Supreme Court adopted the parental consortium cause of action. The Iowa court was also concerned about the possible multiplicity of litigation and conditioned recognition of the child's cause of action

> on a requirement that the child's claim be joined with his injured parent's claims whenever feasible. If a child's consortium claim is brought separately, the burden will be on the child plaintiff to show why joinder was not feasible.

*Weitl,* at 270.

We too are concerned with the possibility of multiple actions, but find the Iowa court's answer to the problem most sensible. We too hold that the children's claims for loss of parental consortium must be joined with the injured parent's claim whenever feasible. A child may not bring a separate consortium claim unless he or she can show why joinder with the parent's underlying claim was not feasible.

Petitioners' third argument is that damages for such a cause of action would be too speculative to measure and would not compensate the child for the loss suffered.

Regarding the speculative nature of the damages, this argument has little merit since evaluating a child's consortium loss is no more speculative than evaluating the loss in the other consortium actions already recognized in this state.

Petitioners direct our attention to cases which say, in effect, that monetary compensation will not enable the child to regain what was lost when the parent was injured. *Hoesing v. Sears, Roebuck & Co.,* 484 F. Supp. 478, 479 (D. Neb. 1980); *Borer v. American Airlines, Inc., supra* at 447. The Wisconsin Supreme Court, in a recent opinion adopting the child's cause of action, addressed this argument as follows:

> We are unswayed by such an argument. Although a monetary award may be a poor substitute for the loss of a parent's society and companionship, it is the only workable way that our legal system has found to ease the injured party's tragic loss. We recognize this as a shortcoming of our society, yet we believe that allowing such an award is clearly preferable to completely denying recovery.

*Theama v. Kenosha,* 117 Wis. 2d 508, 523, 344 N.W.2d 513 (1984).

Allowing a child to recover for loss of consortium may aid in ensuring the child's continued normal and complete mental development into adulthood. As one writer noted,

> The premise that money can mitigate the impact of a loss may be especially appropriate in the case of a child deprived of a parent's love and guidance. Compensation awarded the child might enable the family to obtain live-in help that could provide not only domestic services, but, incidentally, a measure of guidance and companionship. The child who has suffered an emotional maladjustment as a result of his deprivation would have funds available to pay for needed psychiatric treatment. It is not unrealistic to assume that in many cases monetary compensation could make the difference between a child who suffers a permanent handicap due to the loss of a parent's love and guidance and a child who is able to make a reasonable adjustment to his loss.

(Footnotes omitted.) 56 B.U. L. Rev. at 734. Although a monetary award will not enable a child to regain the loss of a parent's love, companionship, and guidance, we believe such an award may enable the child to lessen the impact of the loss.

Petitioners next argue that recognizing the cause of action will result in a double recovery for the same loss. Petitioners state that we should not hide our heads in the sand—that lawyers and judges all know juries consider the plight of children in fixing damages when their parents are severely injured.

We are not persuaded by this argument since it asks us to recognize that juries do not follow the instructions of the trial court. The proper approach is to bring out in the open the children's damages and properly instruct the jury that they are separate and distinct from the parent's injury. This will prevent the double recovery feared by petitioners.

In *Berger v. Weber,* 411 Mich. 1, 303 N.W.2d 424 (1981), the Michigan Supreme Court, by quoting from the Court of Appeals decision in the same case, stated:

"Rather than having juries make blind calculations of the child's loss in determining an award to the parent, a child's loss could be openly argued in court and the jury could be instructed to consider the child's loss separately. The award would accrue directly to the child rather than be lumped in with that of the parent who may or may not spend it for the child's benefit."

(Citation omitted.) *Berger,* at 17.

By distinctly specifying the child's damages and properly instructing the jury, we believe the possibility of a double recovery will be prevented.

Some courts limit recovery for loss of parental consortium to minor children dependent on the parent. *Ferriter v. Daniel O'Connell's Sons, Inc.,* 381 Mass. 507, 413 N.E.2d 690 (1980); *Weitl v. Moes,* 311 N.W.2d 259 (Iowa 1981); *Theama v. Kenosha,* 117 Wis. 2d 508, 344 N.W.2d 513 (1984). Although minors are the group most likely to suffer real harm due to a disruption of the parent–child relation-

ship, we leave this for the jury to consider in fixing damages. This is consistent with our view in wrongful death actions of allowing a child to recover for loss of parental consortium beyond the period of minority. *Kramer v. Portland–Seattle Auto Freight, Inc.,* 43 Wn.2d 386, 397, 261 P.2d 692 (1953).

Petitioners' final argument is that we should reject a child's cause of action since the public will bear the cost through increased insurance rates. This is a standard argument raised against expanding any area of tort liability. When considering the recognition of a new cause of action, the specter of increased insurance rates is one of our least concerns. Even courts rejecting the parental consortium right of action dismiss this argument. *See Norwest v. Presbyterian Intercommunity Hosp.,* 293 Or. 543, 552, 652 P.2d 318 (1982).

The Michigan Supreme Court points out that even using an economic analysis an increase in insurance rates will be offset by future benefits to society.

> Recognizing the child's cause of action may result in increased insurance costs, but compensating a child who has suffered emotional problems because of the deprivation of a parent's love and affection may provide the child with the means of adjustment to the loss. The child receives the immediate benefit of the compensation, but society will also benefit if the child is able to function without emotional handicap. This may well offset any increase in insurance premiums.

*Berger v. Weber, supra* at 15.

We conclude that the reasons for recognizing a child's cause of action for loss of parental consortium outweigh any problems such an action may present. Accordingly, we hold that a child has an independent cause of action for loss of the love, care, companionship and guidance of a parent tortiously injured by a third party. This separate consortium claim must be joined with the parent's underlying claim unless the child can show why joinder was not feasible. We also limit this new right of action to causes of action arising

on or after the date of the filing of this opinion, except that it is to be applicable in the present case.

WILLIAMS, C.J., ROSELLINI, UTTER, BRACHTENBACH, DOLLIVER, and DIMMICK, JJ., and CUNNINGHAM, J. Pro Tem., concur.

DORE, J. (dissenting)—The majority asserts that courts should reassess the common law and alter it where justice requires. I agree. However, before altering the common law, this court should do more than look at precedent and then decide the next step. Rather, it should ask whether taking the next step is the right thing to do.

This court must examine the consequences of allowing a child to recover for the loss of parental consortium. Parental consortium consists of the intangible aspects of a relationship: love, companionship and guidance. The majority asserts that money will aid in "the child's continued normal and complete mental development into adulthood." Majority opinion, at 138. By making this statement, the majority is assuming that children who are deprived of one parent's love have difficulties in their mental development. Yet the majority cites no evidence to support this assumption.[4] A more likely scenario is that a child is very hurt by the initial loss and, as time goes by, compensates for such loss by relying on other family members and friends to supply love, companionship and guidance. It is only these new and enlarged relationships and not money that can truly compensate the child's loss. This salient point was recognized by the California Supreme Court:

> [M]onetary compensation will not enable plaintiffs to regain the companionship and guidance of a mother; it will simply establish a fund so that upon reaching adulthood, when plaintiffs will be less in need of maternal

---

[4]If the majority's assumption were true, then 25 percent of the children now growing up in the United States would have trouble in their mental development since one out of four children live in a household lacking one or both parents. United States Dep't of Commerce, Bureau of the Census, *Statistical Abstract of the United States* (104th ed. 1984).

guidance, they will be unusually wealthy men and women.

*Borer v. American Airlines, Inc.,* 19 Cal. 3d 441, 447, 563 P.2d 858, 138 Cal. Rptr. 302 (1977). *See also Berger v. Weber,* 411 Mich. 1, 18, 303 N.W.2d 424 (1981) (Levin, J., dissenting).

Under the majority's decision, a child whose parent is negligently injured will be given a sum of money which will remain in a trust fund until the minor reaches the age of majority. The money will not be used for the benefit of the child in his minority because there is nothing that money can buy to replace a parent's love. Thus, it is different than when a child is compensated for a tangible loss because there the child sees how the money helps buy things to replace the loss. Here, the child only knows that he received some money because his mother or father cannot treat him like she/he used to. The signal that such an award sends to the child should cause some concern. The child may grow up believing that money can buy anything—including the love of a parent. Or perhaps the child will get the impression that the special relationship he had with his parent was not special after all because it could be replaced by money. Either way, both signals will be detrimental to the child's mental development.

Today's decision, in addition to providing no benefit to the child, does not recognize the fact that liability for one's negligence must end someplace. As stated by Judge Breitel in *Tobin v. Grossman,* 24 N.Y.2d 609, 619, 249 N.E.2d 419, 301 N.Y.S.2d 554 (1969):

> Every injury has ramifying consequences, like the ripplings of the waters, without end. The problem for the law is to limit the legal consequences of wrongs to a controllable degree.

*See also Suter v. Leonard,* 45 Cal. App. 3d 744, 746, 120 Cal. Rptr. 110 (1975) ("[N]ot every loss can be made compensable in money damages, and legal causation must terminate somewhere."). Using the majority's reasoning, a child should be allowed to recover where the child had no

father, and an uncle, who was the child's father figure, was severely, negligently injured. Or a person whose close friend was negligently injured should be allowed to recover where the two had grown up together and had given each other "love, guidance, and companionship". The strongest case for allowing recovery would be where a person's employer is negligently injured, resulting in the employee's loss of employment. In this example, the employee has suffered a measurable loss. The argument for allowing recovery is stronger in this example, in that money is a good compensation for the injury since, without employment, the employee will be without an income. There are many more examples that analytically make sense, yet it is clear that if all injuries were compensated, the courts, and perhaps society, would have great difficulty even functioning.

The majority may argue that for purposes of the present issue, recovery will only be allowed to members of the immediate family. In addition to being analytically unsound, which is the only basis the majority has for extending the right of recovery to the present situation, limiting recovery to members of the immediate family still raises problems. Should a child be able to recover from a parent who negligently injures himself or who is partially responsible for his injury? Should a child be allowed to recover for the negligent injury to a sibling? Should a child be allowed to recover where the injury is only temporary? If so, how long does the disability have to be in order for the child to be allowed to recover: one year? one month? one week?

Under the majority's holding, there is at best a minimum benefit to the child in that he will receive a large sum of money when he reaches adulthood. However, giving money to a child when he reaches 18 will not help relieve the pains he experienced years before. Unfortunately, some pains in life must be endured and overcome by the individual himself. Perhaps it is better this way; sometimes a child should grieve, and learn that a parent's love is irreplaceable.

I would have reversed the trial court and dismissed the action.

Reconsideration denied December 12, 1984.