194 P.3d 292 (2008)
George KELLEY, as Guardian Ad Litem for Brittnay Blackshear, a minor child, Phillip Blackshear, Jr., a minor child, and Nicholas Blackshear, a minor child, Appellant,
v.
CENTENNIAL CONTRACTORS ENTERPRISES, INC., a foreign corporation, Respondent.
No. 36089-6-II.
Court of Appeals of Washington, Division 2.
October 28, 2008.
*293 Darrell L. Cochran, James Walter Beck, Gordon Thomas Honeywell, Tacoma, WA, Jason Paul Amala, Attorney at Law, Seattle, WA, for Appellant.
William Walter Spencer, Daira Silvija Faltens, Murray, Dunham & Murray, Seattle, WA, for Respondent.
Stewart Andrew Estes, Keating Bucklin & McCormack, Seattle, Amicus Curiae on behalf of Amicus Washington Defensetrial Lawyers (wdtl)
Kelby Dahmer Fletcher, Peterson Young Putra, Seattle, Amicus Curiae on behalf of Wstla Foundation.
VAN DEREN, C.J.
¶ 1 George Kelley, as guardian ad litem (GAL) for the minor children Brittnay Blackshear, Phillip Blackshear, Jr., and Nicholas Blackshear, appeals the trial court's order dismissing with prejudice the minors' loss of parental consortium claim against Centennial Contractors Enterprises, Inc. (Centennial). He asserts that the trial court erred in determining that the issue was moot and joinder with the parents' previously adjudged underlying claim was feasible. We agree that joinder was not feasible but disagree that the issue was moot. We, thus, reverse and remand for trial.

FACTS
¶ 2 On April 7, 2003, while 35-foot, 800-pound steel beams were being delivered to Centennial at a construction site at Fort Lewis, Washington, one of the beams fell off a forklift and landed on Phillip Blackshear's right leg, pinning him against a stack of beams of the same size, where he remained for some time before the beam could be removed. He sustained serious injuries, requiring multiple surgeries from 2003 through September 2005, and has never returned to work. On March 29, 2004, Phillip and Monica,[1] his wife, filed a complaint for damages, asserting permanent disability negligently caused by Centennial. They did not assert a claim for loss of parental consortium on behalf of their three children. The Blackshears requested a jury trial and a standard-track trial assignment.
¶ 3 Trial was first scheduled for March 28, 2005, but was rescheduled and commenced on September 12, 2005, just four days after Phillip's final surgery for lumbar fusion. On September 22, 2005, the jury returned a verdict finding Centennial negligent and liable for damages for Philip's injuries and losses.
¶ 4 On April 17, 2006, the attorney for Monica and Phillip filed a complaint for damages on behalf of their children, based on the loss of parental consortium under Ueland v. Pengo Hydra-Pull Corp.,[2] 103 Wash.2d 131, *294 691 P.2d 190 (1984). The complaint asserted that it had been "impractical to include the minor [children's] case with the initial claims." Clerk's Papers (CP) at 24. The parents then filed a petition under a different cause number to obtain the appointment of a GAL to pursue the matter on behalf of their children. A court commissioner appointed George Kelley as GAL for the children on May 8, 2006. Thereafter, Kelley acted as the children's GAL in their action against Centennial for loss of parental consortium.
¶ 5 On February 2, 2007, Centennial filed a motion to dismiss with prejudice, asserting that Kelley failed to meet his burden of showing that joinder of the children's claim with the parents' underlying claim had not been feasible. The trial court granted Centennial's motion and dismissed the children's case with prejudice. Kelley appeals.
¶ 6 Following oral argument, we ordered additional briefing and invited amicus briefing to address what we perceive to be important issues of law regarding joinder of claims for loss of parental consortium, tolling the statute of limitations during minority, and changes in the law relating to minors since Ueland was decided in 1984. The order stated
that counsel for appellant and respondent shall file supplemental briefs ... discussing the ... effect of the legislative directive providing for tolling of statutes of limitations during minority and the Ueland decision requiring mandatory joinder of minor's claims with parental claims during minority "if feasible", the public policy implications of competing legal directives, and the changes that have occurred in protecting children's legal interests since 1984. RCW 4.16.190; Ueland[,] 103 Wash.2d 131, 691 P.2d 190.
COA order requesting supplemental briefing at 1.

ANALYSIS
¶ 7 Kelley contends that the trial court erred in granting Centennial's motion to dismiss the children's claim with prejudice because the issue was moot and joinder with the parents' underlying claim was not feasible. We agree with Kelley that it was not feasible to join the children's claim with their parents' claim, but disagree with Kelley that the issue was moot.

I. Standard of Review
¶ 8 In briefing, Kelley argued that the standard of review is de novo, while Centennial asserted that the issue of whether joinder with the parents' claim was feasible is a question of fact reviewed for substantial evidence. At oral argument, Centennial agreed with Kelley that our review is de novo.
¶ 9 Although we have not previously considered the standard of review for a trial court's dismissal under Ueland, the issue involves a failure to join, similar to a dismissal under CR 12(b)(7) for "failure to join a party under [CR] 19" and, while feasibility is generally a question of fact, the definition of "feasible" and the issue of mootness are questions of law. See generally Erwin v. Cotter Health Ctrs., 161 Wash.2d 676, 687, 167 P.3d 1112 (2007) (defining "real estate broker"); Orwick v. Fox, 65 Wash.App. 71, 80, 828 P.2d 12 (1992) (considering a dismissal under CR 12(b)(6) and CR 19). Thus, this case presents a mixed issue of law and fact that we review for an abuse of discretion "with the caveat that any legal conclusions underlying the decision are reviewed de novo." Gildon v. Simon Prop. Group, Inc., 158 Wash.2d 483, 493, 145 P.3d 1196 (2006) (discussing the "standard of review for a trial court's dismissal under CR 12(b)(7) for failure to join an indispensable party under CR 19"). "A [trial] court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons," namely, when the court "relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law." Gildon, 158 Wash.2d at 494, 145 P.3d 1196.

II. Feasibility and Mootness

A. Loss of Parental Consortium Claim
¶ 10 In Ueland, our state Supreme Court recognized a separate cause of action for *295 children's loss of parental consortium because justice so required. 103 Wash.2d at 135-36, 691 P.2d 190. The court expressed a concern for a child's "normal and complete mental development" and noted that while "a monetary award will not enable a child to regain the loss of a parent's love, companionship, and guidance ... such an award may enable the child to lessen the impact of the loss." Ueland, 103 Wash.2d at 139, 691 P.2d 190. But in crafting the new cause of action, the court sought to avoid the "possibility of multiple actions" and held that a "child may not bring a separate consortium claim unless he or she can show why joinder with the parent's underlying claim was not feasible." Ueland, 103 Wash.2d at 137, 691 P.2d 190.

B. Mootness
¶ 11 Kelley contends that the trial court erred in failing to rule that Centennial's dismissal motion was moot. Kelley argues that because the parents' underlying claim had already proceeded to judgment, joinder of the children's claim was not possible and that the issue was, therefore, moot. Kelley reasons that, once the parents' underlying claim was adjudged, the trial court could "take no action and provide no relief (i.e., order that the children be made parties to the underlying action or dismiss the children from the underlying action)." Br. of Appellant at 15.
¶ 12 But the Ueland court specifically created a separate cause of action and established the feasibility rule, placing the burden on the child plaintiff to show that joinder with the parents' underlying claim was not feasible. 103 Wash.2d at 137, 691 P.2d 190. Therefore, when the child plaintiff fails to meet this burden, the trial court may dismiss with prejudice, regardless of whether the underlying claim has been adjudged.
¶ 13 Moreover, if we were to adopt Kelley's reasoning, the feasibility requirement would have no meaning once an underlying claim has been adjudged. In other words, under Kelley's reasoning, because joinder is not possible once a claim has been adjudged, all Ueland claims brought after a judgment has been entered would pass the feasibility test because joinder is no longer possible. This result would give no recognition to the Ueland court's clear limitation of independent claims to ones where joinder was not feasible. Ueland, 103 Wash.2d at 137, 691 P.2d 190.
¶ 14 Thus, we find Kelley's argument unavailing and hold that the fact that the parents' underlying claim has been adjudged does not render moot a motion to dismiss a child's later claim for loss of parental consortium for lack of joinder with the parents' claim.[3][4]

C. Definition of Feasible
¶ 15 Neither our Supreme Court, in adopting this new rule of law in Ueland, nor CR 19, which concerns joinder and also uses the term feasible, specifically define "feasible." Both parties thus discuss Huggins by Huggins v. Sea Ins. Co., 710 F.Supp. 243 (E.D.Wis.1989).
¶ 16 In Huggins, a federal district court sitting in diversity jurisdiction and interpreting Wisconsin law, examined the definition of "feasible" used in cases alleging loss of parental consortium. 710 F.Supp. at 245-46, 248-51. Huggins analyzed cases from six states, including Washington, that allow a loss of parental consortium claim but require joinder with the parents' underlying claims if feasible. See 710 F.Supp. at 248 n. 8 (citing Hibpshman v. Prudhoe Bay Supply, Inc., *296 734 P.2d 991, 997 (Alaska 1987); Dearborn Fabricating & Eng. v. Wickham, 532 N.E.2d 16, 17 (Ind.App. 3 Dist.1988); Nelson v. Ludovissy, 368 N.W.2d 141, 146 (Iowa 1985); Madison v. Colby, 348 N.W.2d 202, 209 (Iowa 1984); Ferriter v. Daniel O'Connell's Sons, Inc., 381 Mass. 507, 517, 413 N.E.2d 690 (1980); Hay v. Med. Ctr. Hosp. of Vermont, 145 Vt. 533, 540, 496 A.2d 939 (1985); Ueland, 103 Wash.2d at 137-40, 691 P.2d 190).
¶ 17 Relying heavily on Ueland and decisions of the Iowa Supreme Court, Huggins noted that, to show it was not feasible to join a child's loss of parental consortium claim with the parents' claim, "the burden is on the consortium claimant to establish that it was impossible, impractical or not in the child's best interest for his or her claim to be joined with those of the injured parent." Huggins, 710 F.Supp. at 250-51. This interpretation comports favorably with the ordinary meaning of "feasible," which is "capable of being done, executed, or effected: possible of realization... capable of being managed, utilized, or dealt with successfully: suitable ... reasonable." Webster's Third New International Dictionary 831 (2002).
¶ 18 Our Supreme Court has said, "[I]n the absence of a provided definition, this court will give a term its plain and ordinary meaning ascertained from a standard dictionary." State v. Taylor, 150 Wash.2d 599, 602, 80 P.3d 605 (2003). Therefore, we adopt the "feasibility" definition articulated in Huggins and hold that where feasibility of joinder is at issue in a loss of parental consortium claim, the child plaintiff has the burden of showing that joinder was "impossible, impractical or not in the child's best interest for his or her claim to be joined with those of the injured parent." Huggins, 710 F.Supp. at 250-51.

D. Feasibility of Joinder with Parents' Claim
¶ 19 Kelley contends that the trial court erred in ruling that he failed to meet his burden of showing that joinder was not feasible.
¶ 20 The record shows that no one appeared as guardian or GAL for the children in the parents' suit and that it was not until May 8, 2006, well after the parents' trial was completed, that Kelley was appointed GAL for the children. In Washington, RCW 4.08.050 requires that "when an infant is a party he or she shall appear by guardian."[5] Therefore, without a guardian it was legally impossible for the children to have joined their claim with that of their parents. Thus, as a matter of law, joinder was not legally feasible and was, therefore, impossible.
¶ 21 We also address the parties' arguments on factual feasibility because where a GAL has been appointed, thus making joinder legally feasible, courts must also address whether it was practical for the children's claims to be joined with the parents' claims and whether joinder was in the children's best interests. Impracticality of joinder and a determination of the children's best interests are questions of fact, and the trial court's resolution of those questions will not be disturbed on review absent an abuse of discretion. Gildon, 158 Wash.2d at 493, 145 P.3d 1196.
¶ 22 Kelley addresses the impracticality of joinder of the children's claims, asserting that "the ultimate physical condition of [Phillip] remained unknown at the close of trial." Br. of Appellant at 11.
Trial began on September 12, 2005, and [Phillip] did not undergo surgery until just four (4) days prior to trial. Only after recuperating from surgery and allowing for recovery time, which meant some time after the adjudication of [Phillip]'s case, was it finally known that the surgery was unsuccessful and [Phillip] was rendered permanently disabled. Had the Blackshear children brought suit with their parents' claims, there simply was not enough factual evidence to support a favorable finding or award, let alone enough to defend a motion for summary judgment that would have likely been brought by [Centennial].
Br. of Appellant at 11-12 (citations omitted).
¶ 23 The trial court disagreed with Kelley's reasoning and, in granting the motion to dismiss, stated:

*297 [T]he fact is, is that if you look at it, [Phillip]'s medical condition always was deteriorating, was never getting better.... There was never a time when [Phillip] could have  the plaintiffs could have said things are getting better, because they were always getting worse.
So there's no facts that I determined that made it apparent to the Blackshear family that they ought to withhold claims of the children. Everything pointed to ... joining the children, because things were never getting better; they were always getting worse.
Report of Proceedings (RP) (Feb. 21, 2007) at 3-4.
¶ 24 In his argument addressing the children's best interests in not joining their parents' suit, Kelley asserts that joinder was not feasible "because doing so would have further delayed the Blackshear family's receipt of their judgment award and would have guaranteed their financial collapse." Br. of Appellant at 13. The trial court stated in its oral decision that it believed joinder in the parents' suit was feasible because "[c]ertainly the financial hardship issue would have presented itself by that time." RP (Feb. 21, 2007) at 3. But the Blackshears explained that during the two and a half years before trial, they had used their savings and then relied on extended credit until the lawsuit was resolved.
¶ 25 The trial court was "not persuaded that [the plaintiffs] met their burden" of showing that joinder with the underlying claim was not feasible. RP (Feb. 21, 2007) at 3. We agree with Kelley that, until the results of Phillip's final surgery were known, it was impractical to assert the children's cause of action for loss of parental consortium. It is undisputed that Phillip Blackshear's final surgery occurred only four days before trial on the parents' claims. The record also demonstrates that, until well after the completion of the parents' lawsuit, the Blackshears believed that the lumbar fusion surgery would relieve Phillip's pain so that he would be able to return to work. Until it became clear that Phillip could not work, that he could not care for their child who requires 24-hour care and supervision and that his ability to parent his children was diminished, the children's loss of consortium claims did not arise or become legally and factually feasible.
¶ 26 It is also undisputed that, without a favorable resolution of the parents' claims against Centennial, the Blackshears were facing extreme financial hardship. Thus, the family's deteriorating financial condition compelled resolution of the parents' claims as soon as possible in the family's and the children's best interests.
¶ 27 The children's evidence showed that it was impractical for them to assert a loss of parental consortium until it was evident that Phillip was permanently disabled and unable to meet their needs, either financially or physically. Thus, it was both impractical and not in the children's best interests to join their claim for loss of parental consortium with their parents' action before evidence supported the children's claimed losses. If the children had filed such claims prematurely, as Kelley argues, there existed the clear possibility of summary judgment dismissal of their claims or a defense verdict due to lack of evidence that Phillip was unable to financially support the family and provide parental care to the children.
¶ 28 Here, the trial court did not address the impossibility of a lawsuit without an appointed GAL for the children, the impracticality of a lawsuit on behalf of the children while the hope existed of a full recovery by their father, or the children's best interests in first having a financial recovery for the parents' losses so that the family was not in financial collapse. Thus, we hold that the record does not support the trial court's decision to dismiss the children's claims based on failure to meet their burden to show that joinder was not feasible. Without consideration of impossibility, impracticality, or the children's best interests in bringing suit with the parents, the trial court abused its discretion. See Gildon, 158 Wash.2d at 494, 145 P.3d 1196.
¶ 29 In sum, where children are not represented by a GAL, it is not legally feasible for the children to join their claim for loss of parental consortium with their parents' tort claims. And when a GAL is timely *298 appointed, evidence of loss of parental consortium must exist before the parents' trial for such joinder to be practical and in the child's best interests. Here, the record is clear that there was no legally feasible way for the children to join their parents' suit, and Kelley satisfied the children's burden to show that joinder was impractical and not in the children's best interests before or at the time of trial on their parents' claims. Thus, the trial court abused its discretion in dismissing the Blackshear children's claim for loss of parental consortium.
¶ 30 We reverse the trial court's order dismissing the children's action with prejudice and remand for trial.
We concur: HUNT and PENOYAR, JJ.
NOTES
[1] Because they have the same last name, we refer to Phillip and Monica by their first names. In doing so, we mean no disrespect.
[2] The clerk's papers, report of proceedings, briefs, and case citations often refer to "Ueland v. Reynolds' Metals, Inc." We refer to the case from Washington Reports 2d, "Ueland v. Pengo Hydra-Pull Corp."
[3] In Ueland, the court expressed concern that, by creating this new cause of action, it might burden the trial courts with multiple lawsuits. 103 Wash.2d at 136-37, 691 P.2d 190. Kelley asserts that the Ueland court's multiplicity concern was only with regard to multiple lawsuits by multiple children of the same injured parent, rather than a second lawsuit by the children as a group. Therefore, he argues that the Ueland court's concern about multiplicity is not implicated in this case. We disagree. Our Supreme Court clearly wanted to forestall unnecessary subsequent lawsuits because it held that "children's claims for loss of parental consortium must be joined with the injured parent's claim whenever feasible." Ueland, 103 Wash.2d at 137, 691 P.2d 190. Thus, this argument also fails.
[4] Moreover, a review of the scant number of appellate cases based on minors' claims for loss of parental consortium suggests that our Supreme Court's concern about multiplicity of litigation can be assuaged.
[5] Because all three children were 14 or younger when they filed their amended complaint, they were "infants" for the purposes of RCW 4.08.050.