236 P.3d 197 (2010)
George KELLEY, as guardian ad litem for Brittnay Blackshear, a minor child, Phillip Blackshear, Jr., a minor child, and Nicholas Blackshear, a minor child, Respondent,
v.
CENTENNIAL CONTRACTORS ENTERPRISES, INC., a foreign corporation, Petitioner.
No. 82474-6.
Supreme Court of Washington, En Banc.
Argued January 19, 2010.
Decided August 5, 2010.
*198 William Walter Spencer, Daira Silvija Faltens, Murray Dunham & Murray, Seattle, WA, for Petitioner.
Darrell L. Cochran, Pfau Cochran Vertetis Kosnoff, P.L.L.C., James Walter Beck, Gordon Thomas Honeywell, Tacoma, WA, Jason Paul Amala, Pfau Cochran Vertetis Kosnoff, P.L.L.C., Seattle, WA, for Respondent.
Stewart Andrew Estes, Mary Ann McConaughy, Keating Bucklin & McCormack, Seattle, WA, amicus counsel for Washington Defense Trial Lawyers.
Bryan Patrick Harnetiaux, Spokane, WA, George M. Ahrend, Ahrend Law Firm, P.L.L.C., Moses Lake, WA, amicus counsel for Washington State Association for Justice Foundation.
Kelby Dahmer Fletcher, Stokes Lawrence, Seattle, WA, Bryan Patrick Harnetiaux, Spokane, WA, amicus counsel for Washington State Trial Lawyers Association Foundation.
ALEXANDER, J.
¶ 1 In 1984, we held that a child may maintain a lawsuit for loss of parental consortium. Ueland v. Pengo Hydra-Pull Corp., 103 Wash.2d 131, 691 P.2d 190 (1984).[1] We, however, expressed the concern that such claims might result in multiple lawsuits, requiring relitigation of issues that had been litigated in the injured parent's underlying lawsuit. We, therefore, determined that a child's claim for loss of parental consortium must be joined with the injured parent's claim, unless the child can show that joinder was "not feasible." Id. at 137, 691 P.2d 190. In the instant case, three minor children commenced a lawsuit in order to recover for loss of parental consortium. This followed an accident that rendered their father permanently disabled. The trial court granted summary judgment in favor of the named defendants on the basis that the children failed to show that joinder of their claim with their injured parent's claim was "not feasible." We must decide here whether the Court of Appeals properly reversed the trial court's ruling granting summary judgment. We affirm the Court of Appeals, concluding that there are genuine issues of material fact that preclude summary judgment.

I
¶ 2 In 2003, a truck driver by the name of Phillip Blackshear delivered a set of steel beams to a construction site. Blackshear was injured at this site when a beam rolled off a forklift and landed on him. The forklift was operated by an employee of Centennial Contractors Enterprises, Inc., the general contractor at the construction site. Blackshear thereafter underwent treatment for his injuries, including shoulder surgery, ankle surgery, carpal tunnel surgery, and back surgery. Following lumbar fusion surgery on September 8, 2005, Blackshear's doctors determined that he was permanently disabled.
¶ 3 Blackshear and his wife had sued Centennial for negligence in March 2004. The case was set for trial in the ordinary course but was twice delayed. Because the trial court had determined that Centennial was liable as a matter of law, the trial was limited to a determination of Blackshear's damages. The trial began on September 12, 2005, just four days after Blackshear's lumbar fusion surgery. The trial concluded with a verdict in Blackshear's favor.[2]
¶ 4 Six months after the judgment was rendered in Phillip Blackshear's lawsuit against Centennial, the three Blackshear minor children commenced their lawsuit against Centennial for loss of parental consortium. Shortly thereafter, upon the children's motion, George Kelley was appointed as their guardian ad litem.
*199 ¶ 5 Centennial responded by moving for dismissal of the children's lawsuit, arguing that "a child may not bring a separate consortium claim[] unless the child can establish that it was not feasible to join their claims with the parents['] underlying claims" and indicated that "[t]here is no reason why it was not `feasible' to join the claims of the children in the prior lawsuit." Clerk's Papers (CP) at 51.
¶ 6 The children, through guardian ad litem Kelley, responded with Phillip Blackshear's declaration wherein Blackshear stated that after the lumbar fusion surgery he came to the realization that
I will never be able to provide for my family financially as I once did, that I will never be able to interact with my wife and children as we once did, and that I will never be able to give my children the love, support, care, attention, and companionship that we all seek and miss.
CP at 63. Phillip Blackshear also declared that prior to the accident he was the sole wage earner and provider for his family and that because of his medical needs "medical bills began to accumulate at an alarming rate." Id. He stated, additionally, that the family had "exhausted any savings that we had and were forced to rely on extended credit to make ends meet as we waited for my lawsuit to be resolved.... I am unsure how we would have made it if the judgment award did not come when it did." Id.
¶ 7 The trial court considered Blackshear's declaration, as well as other documents outside the pleadings, and, consequently, treated the motion as one for summary judgment. It granted the motion and entered an order dismissing the complaint against Centennial.
¶ 8 Kelley appealed, on behalf of the Blackshear children, to Division Two of the Court of Appeals. After oral argument, that court requested supplemental briefing and eventually issued an opinion in which it reversed the trial court. Kelley v. Centennial Contractors Enters., Inc., 147 Wash.App. 290, 293-94, 301, 194 P.3d 292 (2008), review granted, 165 Wash.2d 1048, 208 P.3d 555 (2009). In doing so, the Court of Appeals concluded that it was not feasible for the children to join their parents' lawsuit because (1) they were not represented by a guardian ad litem when their parents' suit was pending and (2) joinder was not practical because the results of the father's final surgery were unknown at the time of their parents' suit and it was not in the children's best interests to join that suit because the family was facing extreme financial hardship, so quick resolution of the suit was necessary.

II
¶ 9 Questions of joinder present mixed issues of law and fact that we review for an abuse of discretion "with the caveat that any legal conclusions underlying the decision are reviewed de novo." Gildon v. Simon Prop. Group, Inc., 158 Wash.2d 483, 493, 145 P.3d 1196 (2006) (discussing the standard of review for a trial court's dismissal under CR 12(b)(7) for failure to join an indispensable party under CR 19). "A [trial] court abuses its discretion when its decision is manifestly unreasonable, or exercised on untenable grounds or for untenable reasons," namely, when the court "relies on unsupported facts, takes a view that no reasonable person would take, applies the wrong legal standard, or bases its ruling on an erroneous view of the law." Id. at 494, 145 P.3d 1196. While feasibility is generally a question of fact, the definition of "feasible" or "not feasible" is a question of law. See Erwin v. Cotter Health Ctrs., 161 Wash.2d 676, 687, 167 P.3d 1112 (2007) (explaining that the definition of "real estate broker" is a question of law, but the details of the real estate broker's conduct is a question of fact).
¶ 10 An order granting summary judgment is reviewed de novo. Go2Net, Inc. v. FreeYellow.com, Inc., 158 Wash.2d 247, 252, 143 P.3d 590 (2006) (citing Troxell v. Rainier Pub. Sch. Dist. No. 307, 154 Wash.2d 345, 350, 111 P.3d 1173 (2005)). This court views the facts and all reasonable inferences from those facts in the light most favorable to the nonmoving party. Stevens v. Brink's Home Sec., Inc., 162 Wash.2d 42, 46-47, 169 P.3d 473 (2007). Summary judgment is proper only where "`there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.'" Id. at 47, 169 *200 P.3d 473 (quoting Cerrillo v. Esparza, 158 Wash.2d 194, 200, 142 P.3d 155 (2006)).

III
¶ 11 Kelley argues that RCW 4.16.190,[3] which tolls a minor's claim until the age of 18, trumps the requirement in Ueland that a child may not bring a separate claim for loss of parental consortium unless it was "not feasible" to join the parent's underlying lawsuit. We disagree because such a holding would completely undercut the decision we made in that case, as a child would never have to show that it was "not feasible" to join the parent's underlying lawsuit. In our view, therefore, a child's claim for loss of parental consortium is tolled only when it is proved that it was not feasible for the child to join his or her parent's lawsuit.
¶ 12 As a prelude to addressing the merits of Kelley's claim, we must determine the meaning of the term "not feasible" because, as we indicated in Ueland, a child can bring a separate loss of consortium claim only if it was "not feasible" for the child to join the parent's underlying lawsuit. The Court of Appeals correctly noted that "feasible" is not defined in Ueland or in CR 19.[4]Kelley, 147 Wash.App. at 297, 194 P.3d 292. It also correctly noted that "`[i]n the absence of a provided definition, this court will give a term its plain and ordinary meaning.'" Id. at 298, 194 P.3d 292 (alteration in original) (quoting State v. Taylor, 150 Wash.2d 599, 602, 80 P.3d 605 (2003)).
¶ 13 The standard dictionary definition of "feasible" is "capable of being done, executed, or effected: possible of realization ... capable of being managed, utilized, or dealt with successfully: SUITABLE ... REASONABLE." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 831 (2002). In reaching its conclusion that it was not feasible for the children to join their parents' lawsuit, the Court of Appeals noted that the standard dictionary definition of "feasible" comports favorably with language from a case in which a United States district court interpreted the term "not feasible" in the context of Wisconsin's loss of parental consortium cause of action. That court held that the term means it is "`impossible, impractical, or not in the child's best interest for his or her claim to be joined with those of the injured parent.'" Kelley, 147 Wash.App. at 297, 194 P.3d 292 (emphasis added) (quoting Huggins by Huggins v. Sea Ins. Co., 710 F.Supp. 243, 250-51 (E.D.Wis.1989)). The Court of Appeals adopted the Huggins definition of "not feasible." Id. at 298, 194 P.3d 292.
¶ 14 The dictionary definition of "feasible" however, is distinguishable from the portion of the Huggins definition that equates "not feasible" with not being in a child's best interest. We do not believe that the plain and ordinary meaning of "not feasible" comports with such a definition. Indeed, in Ueland, we did not limit a minor's right to separately bring a loss of parental consortium claim to circumstances where it was in the child's best interest. Ueland, 103 Wash.2d at 137, 691 P.2d 190. Instead, we held in Ueland that a child may bring such a cause of action only when it was not feasible for the child to have joined the parent's underlying lawsuit. Id. We, therefore, reject the Huggins definition of "not feasible" that the Court of Appeals adopted and, instead, accord the term its plain and ordinary meaning as set forth in Webster's.
¶ 15 With that in mind, we turn to Centennial's assertion that the Court of Appeals erred by reversing the trial court's decision to grant summary judgment. As noted above, the trial court granted summary judgment on the basis that it was not feasible for the children to join their parents' lawsuit because a guardian ad litem was not appointed to represent them at that time. Kelley contends that the burden was on Centennial to raise the issue of the children's joinder in the underlying lawsuit. See Suppl. Br. of Resp't at 11.
*201 ¶ 16 The statute relating to the appointment of guardians ad litem says that a trial court must appoint a guardian ad litem "upon the application of the infant, if he or she be of the age of fourteen years, or if under that age, upon the application of a relative or friend of the infant." RCW 4.08.050(1) (emphasis added). Clearly the burden to request a guardian ad litem was not on the defendant, Centennial, as Kelley claims. The statute makes it clear that the obligation to make such a request rests with the minor children or a relative or friend of the children. It was, in short, feasible for the children to obtain a guardian ad litem to represent them in their parents' underlying lawsuit.
¶ 17 However, another basis upon which the Court of Appeals relied, i.e., that it was not feasible for the children to join a lawsuit maintained by their parents, is legally supportable. As we observed above, the Court of Appeals concluded that the record showed that it was impractical for the Blackshear children to bring a lawsuit "while the hope existed of a full recovery by their father." Kelley, 147 Wash.App. at 301, 194 P.3d 292. The Court of Appeals also determined that it was in the children's "best interests" to first have a "financial recovery for the parents' losses so that the family was not in financial collapse." Id. Although it was improper for that court to consider the children's "best interests" in this context, the error is not significant if the submissions to the trial court show that there are questions of fact as to whether the family's financial position rendered it impractical or impossible for the children to join their parents' lawsuit.
¶ 18 Our review of the submissions convinces us that such a factual question exists. Centennial contends that there is no such factual question, pointing out that the father's injuries were known before the parents' lawsuit was filed and that his condition was deteriorating throughout the entire process. Centennial also notes that the family did not seek an accelerated trial date, arguably undercutting the argument that there was a dire financial need for prompt resolution of the parents' lawsuit.
¶ 19 On the other hand, the children's guardian ad litem responded that it was not feasible for the children to join their parents' underlying lawsuit because the children did not have a sufficient basis for bringing the lawsuit until the extent of their father's injuries was known and he had recuperated from surgery long enough to learn whether the surgery had rendered him permanently disabled. Consistent with that assertion, Kelley presented evidence, in the form of Blackshear's declaration, that it was not until after the last surgery that the children learned
their father will never be able to work and provide for them, will never be able to participate in activities with them as he once did, will never be able to love and care for them as they may want him to, and [will not experience] other joys that children with non-disabled parents take for granted.
Suppl. Br. of Resp't at 12.
¶ 20 Phillip Blackshear also stated the family was in a "desperate" financial situation because their savings were gone and they had exhausted all available credit resources. CP at 63. According to Kelley, it was not feasible for the children to join their parents' lawsuit because joinder would have "sealed the financial fate of the Blackshear family." Suppl. Br. of Resp't at 12.
¶ 21 Viewing the submissions to the trial court, in the light most favorable to the nonmoving party, it is apparent that there is, at the very least, a substantial factual dispute about whether it was feasible, meaning practical or possible under the circumstances, for the children to join their parents' lawsuit. We, therefore, hold that the trial court erred in granting summary judgment against Kelley.

IV
¶ 22 In conclusion, we hold that there is a genuine issue of material fact that precludes summary judgment on whether it was feasible for the children to join their parents' underlying lawsuit. We, therefore, affirm the Court of Appeals' reversal of the trial court's ruling granting summary judgment and remand for further proceedings.
*202 WE CONCUR: CHARLES W. JOHNSON, SUSAN OWENS, and JAMES M. JOHNSON, Justices.
MADSEN, C.J. (concurring).
¶ 23 I agree with the lead opinion's conclusion that the children should be permitted to bring their lawsuit for loss of consortium. However, I write separately because I disagree with the lead opinion's reasoning in several respects. First, the lead opinion errs by treating the question of feasibility as a question of fact. Feasibility, like joinder, is a question of law. In addition, although the lead opinion correctly rejects the "best interests of the child" as a factor in determining feasibility, it then inconsistently says there is a question of fact in this case as to whether joinder was in the best interests of the children. The best interests of the child cannot be both irrelevant and relevant, as the lead opinion's analysis suggests.
¶ 24 Although I disagree with the lead opinion that there are questions of fact remaining on the issue of feasibility, I nevertheless agree with the result because I believe it is time to reject the feasibility of joinder requirement for children bringing loss of consortium claims independent of their parents. We should apply ordinary joinder rules.

Discussion
¶ 25 Contrary to the lead opinion's assertion, this court has never characterized joinder as a question of fact. Although it may be predicated upon a factual inquiry, the question of joinder is itself one of law for the trial court to determine and for this court to review for abuse of discretion. Gildon v. Simon Prop. Group, Inc., 158 Wash.2d 483, 493, 145 P.3d 1196 (2006). Legal inquiries generally require factual findings to support an analysis, but this does not make them issues of fact.
¶ 26 That joinder is a question of law can be seen in the analysis a court must engage in to resolve the issue. Civil Rule (CR) 19 sets out the rules for joinder and the steps to determine whether joinder is "feasible" or not and how to proceed where joinder is not "feasible." CR 19(a), (b). Our case law interpreting CR 19 requires an inquiry focused on the legal standards: whether a party is necessary "for a just adjudication" and if so, where the necessary party is absent and cannot be joined, whether the action may proceed "in equity and good conscience." Burt v. Dep't of Corrections, 168 Wash.2d 828, 833, 231 P.3d 191 (2010); Gildon, 158 Wash.2d at 493, 145 P.3d 1196 ("considering the nature of the balancing and factual inquiry" we review a dismissed failure to join for abuse of discretion while the underlying legal conclusion is reviewed de novo). Similar to our analysis under CR 19, I would conclude that a decision on the feasibility of joinder in the context of a child's independent loss of consortium claim is a question of law.
¶ 27 Turning to the definition of "feasible," the lead opinion rejects best interests of the child as a consideration. It does so on the ground that the foundational case, Ueland v. Pengo Hydra-Pull Corp., 103 Wash.2d 131, 691 P.2d 190 (1984), which adopted the feasibility standard, considered "possibility" and "practicality" but did not include the best interests of the child as part of a feasibility determination. Yet, having rejected this consideration, the lead opinion nevertheless imports the best interests of the child into its analysis of feasibility when it holds that a question of fact remains as to the parents' need to file a claim prior to completion of the father's surgery in order to avoid financial ruin. According to the lead opinion, the timing of the parents' lawsuit may impact the children's interests.
¶ 28 If the best interests of the child are not a relevant part of the inquiry, then the lead opinion should not consider it here. Indeed, whether the parents "needed" to file their claims in order to avoid financial ruin has no bearing on the ability (i.e., the possibility or practicality) of the children to join their parents' lawsuit. There is no evidence that joining the children's claim to their parents' claim was not legally possible at that time when viewed under the correct standard.
¶ 29 In addition, I am concerned with the lead opinion's holding that the inability of the children to know the full extent of their father's injury bears on the issue of feasibility. *203 As Justice Fairhurst's concurrence notes, this discussion by the lead opinion suggests that whether a claim for loss of consortium may be brought depends on whether the injury giving rise to the consortium claim is a permanent injury. It does not. Indeed, the children's parents brought their claim for loss of consortium despite the fact that they did not know whether the father would recover at the time of filing.
¶ 30 Nevertheless, the lead opinion appears to believe that children should know the full extent of injury before filing a loss of consortium claim. But, adults are not subject to this requirement, and for good reason. Knowledge of the extent of the injury relates to damages. The risk of under- or overestimating damages is not unique to children independently claiming loss of consortium, but exists for all plaintiffs. Indeed, statutes of limitations often prevent a plaintiff from waiting to learn the precise extent of injuries before filing a claim. There is no principled reason to treat a child's loss of consortium claim differently.
¶ 31 In my view, the lead opinion's flawed analysis illustrates why it is time to reject the feasibility of joinder requirement for children that we adopted in Ueland. There we noted the evolving nature of children as litigants. We have now reached a point in the common law where children are seen as litigants in their own right and should not be subjected to standards different from those imposed on adults. To do so only creates a trap for the unwary child litigant. Instead, we should apply ordinary joinder rules to determine whether a child's lawsuit must be joined with his or her parent's suit. This will avoid confusing analysis such as the one in which the lead opinion engages.
¶ 32 I would dispense with the feasibility requirement entirely, and remand to the trial court to apply ordinary rules of joinder.
FAIRHURST, J. (concurring).
¶ 33 One could infer from the lead opinion's holding that a child cannot sue for loss of parental consortium unless the parent's underlying injury causes permanent disability. The question of whether permanent disability is required to sustain a claim for loss of parental consortium is one of first impression and should be explored fully rather than decided by implication. Because I do not necessarily agree that Washington should recognize claims only for permanent loss of parental consortium, I write separately to encourage the parties to address on remand whether Washington should recognize claims for loss of consortium based on a parent's temporary injury.
¶ 34 To defeat summary judgment, the Blackshear children must point to a genuine factual dispute as to whether they could feasibly have joined their claim to the underlying negligence suit.[1]Stevens v. Brink's Home Sec., Inc., 162 Wash.2d 42, 46-47, 169 P.3d 473 (2007). The parties do not dispute that when the Blackshear children filed a claim for loss of parental consortium in March 2006, they alleged facts that would be sufficient to state their claim if not for the joinder requirement. The Blackshear children must therefore allege that, sometime between the time their parents filed suit and the time the children filed suit, their loss-of-consortium claim became viable due to some change in circumstances.[2] The Blackshear children allege two changed circumstances: first, that they went from thinking Blackshear would make a full recovery to knowing he would not when his final surgery proved ineffective and, second, that their family's financial situation became desperate around the time Blackshear's negligence suit went to trial. Without further explanation, the lead opinion's holding that these facts are material to the feasibility of joinder could be read as implying that the Blackshear children needed to know their father's disability would be permanent before their claim accrued. I wish to *204 emphasize the lead opinion's holding should not be thus construed.
¶ 35 I concur in the result because the questions of fact in this case cannot be conclusively found to be either material or immaterial to the feasibility of joinder until the question of whether Washington recognizes claims for temporary loss of parental consortium is resolved. That question should be addressed on remand.
STEPHENS, J. (concurring).
¶ 36 I concur in the result reached by the lead opinion and would affirm the Court of Appeals. I would do so, however, for the reasons articulated by that court. It observed that the unexplained, undefined requirement in Ueland v. Pengo Hydra-Pull Corp., 103 Wash.2d 131, 691 P.2d 190 (1984), that children's claims for loss of parental consortium be joined with the parents' claims reflected a policy choice, not a rigid "joinder" requirement. Kelley v. Centennial Contractors Enters., Inc., 147 Wash.App. 290, 295, 194 P.3d 292 (2008), review granted, 165 Wash.2d 1048, 208 P.3d 555 (2009). The lead opinion appropriately recognizes that Ueland sets a fairly low threshold, but I agree with the Court of Appeals that the Blackshear children met this threshold based not only on the factual infeasibility of joining their claims with their parents' claims, but also legal infeasibility, where the Blackshear children were not represented by a guardian ad litem.
WE CONCUR: RICHARD B. SANDERS, and TOM CHAMBERS, Justices.
NOTES
[1] Ueland v. Pengo Hydra-Pull Corp. is the title used in the Washington Reports; the Pacific Reporter refers to the case as Ueland v. Reynolds Metals Company, 103 Wash.2d 131, 691 P.2d 190.
[2] The amount of Blackshear's judgment is not in the record.
[3] RCW 4.16.190(1) provides in relevant part that "if a person entitled to bring an action ... be at the time the cause of action accrued ... under the age of eighteen years, ... the time of such disability shall not be a part of the time limited for the commencement of action."
[4] The Court of Appeals looked to CR 19 for the definition of "feasible" because that rule concerns joinder and uses the term "feasible." Kelley, 147 Wash.App. at 297, 194 P.3d 292.
[1] In Washington, the plaintiff in a loss-of-parental-consortium case has the burden of setting forth facts showing unfeasibility. Ueland v. Pengo Hydra-Pull Corp., 103 Wash.2d 131, 137, 140, 691 P.2d 190 (1984).
[2] The Blackshear children's claim accrued when they "knew or should have known the essential elements of [their] claim." Green v. A.P.C., 136 Wash.2d 87, 102, 960 P.2d 912 (1998).